A96A0817. SUMNER et al. v. IDEAL STEEL PRODUCTS, INC.
(475 SE2d 708)

RUFFIN, Judge.

Gilbert and Sherin Sumner sued Ideal Steel Products, Inc. ("ISP") for injuries they allegedly sustained when Gilbert fell from an elevated platform erected by ISP. The complaint alleged that ISP was negligent in failing to install guardrails around the perimeter of the platform. The Sumners claimed damages resulting from Gilbert Sumner's personal injuries and from Sherin Sumner's loss of consortium. At trial, following the close of all the evidence, ISP moved for a directed verdict on the grounds that Gilbert Sumner assumed the risk of working on the platform and that his own negligence caused his injuries. The trial court granted ISP's motion, and the Sumners appeal from that order. For reasons which follow, we affirm.

"A directed verdict is proper when all the evidence introduced and all reasonable inferences therefrom, construed in favor of the nonmoving party, demand a particular verdict. OCGA § 9-11-50 (a); [Cit.]" *Brown v. Carlisle*, 214 Ga. App. 483 (448 SE2d 256) (1994).

Viewed in this light, the evidence at trial showed that Gilbert Sumner was a self-employed mechanic. At the time of his accident,

Sumner was repairing a concrete silo for Fowler-Flemister Concrete, Inc. ("Fowler-Flemister") at its Greensboro plant. The platform from which Sumner fell was located at the base of the concrete silo and was raised approximately 14 feet from the ground. The platform was square, measuring approximately ten feet on each side, and its floor constructed of expanded metal decking. The decking had a grate-like appearance, with hexagonal cutouts. While ISP acknowledged that industry standards required that the platform have guardrails, it constructed the platform without guardrails at Fowler-Flemister's direction.

The incident occurred while Sumner was standing on a wooden ladder located on the platform's expanded metal decking. As Sumner was swinging a small sledgehammer at a control box, the ladder's rear right leg fell through a hexagonal cutout in the expanded metal deck. The ladder collapsed and Sumner fell, rolling off the platform to the ground and sustaining the injuries complained of here.

On appeal, the Sumners assert that the trial court erred in directing a verdict because a jury question remained as to whether Gilbert Sumner's negligence caused the accident and whether he assumed the risk of falling from the platform. They point to Gilbert Sumner's trial testimony showing that he never realized there were no guardrails on the platform and that he checked the ladder before he climbed it to ensure it was sturdy.

The evidence presented at trial, however, demands the conclusion that Gilbert Sumner not only knew there was no guardrail, but also knew that the ladder could fall through the expanded metal decking. On the day of the incident, but prior to his fall, Sumner had climbed up to and walked on the platform three separate times. On his first trip to the platform, which lasted five to ten minutes, Sumner evaluated how he was going to get his tools on the platform and noticed there was a big drop-off. Sumner then went to his truck, put his welding tools into the bucket of a front-end loader, and, with the assistance of two Fowler-Flemister employees, lifted the tools onto the platform. On his second trip to the platform, Sumner used his welding tools to cut a hole in an auger, then placed his tools on the deck within three to four feet of the platform's edge. The incident occurred during Sumner's third trip to the platform.

Although Sumner testified that he made sure the wooden ladder was sturdy, he admitted that if the ladder turned, its legs could fall through the holes in the platform deck. Likewise, Sumner's expert witness testified that the ladder was unsuitable for use on the expanded metal surface and that Sumner had sufficient time to summon another workman to hold the ladder or put a piece of plywood beneath the ladder. Furthermore, although Sumner testified numerous times that he did not notice the absence of guardrails, even his

expert witness testified that the lack of guardrails was "open and obvious" and readily apparent when standing on the platform. Moreover, in deposition testimony which was presented at trial, Sumner acknowledged that one could tell by looking at the platform if it had a railing on it.

This case is similar to *Brown*, supra, where we affirmed the trial court's directed verdict in favor of the defendant. In *Brown*, the plaintiff, a construction worker, was injured when he opened a door onto a yet unconstructed porch and fell ten feet to the ground. He contended that if a bar had been placed across the door, he would not have tried to go through the door opening. The evidence showed, however, that the plaintiff was familiar with the progress of construction and that he had equal knowledge that no bar had been nailed across the door. We held that even though the premises were dangerous and the defendant was negligent, he was "not liable for an injury where the plaintiff had equal or superior knowledge of [the] dangerous condition and fail[ed] to exercise ordinary care for his own safety. If he knows of a defect, or in the exercise of reasonable care would have known of it, he must use all his senses in a reasonable measure amounting to ordinary care to discover and avoid those things that might cause him harm. [Cit.] Although the issue of a plaintiff's exercise of due diligence for his own safety is ordinarily a question for the jury, it may be summarily adjudicated where the plaintiff's knowledge of the risk is clear and palpable. [Cit.] [A p]laintiff is charged with knowledge of those defects which he had actually observed or which were so transparently obvious that his failure to observe them cannot reasonably be excused. [Cits.]" Id. at 484.

In this case, the evidence showed that Sumner not only knew there was no guardrail, but also knew that the ladder could fall through the expanded metal decking. "In these circumstances, the evidence and all reasonable deductions therefrom demand a verdict for [ISP]." Id. See also *Morrison v. Anderson*, 221 Ga. App. 396 (1) (471 SE2d 329) (1996) (summary judgment proper where evidence showed that plaintiff had equal knowledge there was no railing on loading dock from which he fell); *Brantley v. Custom Sprinkler Systems*, 218 Ga. App. 431 (2) (461 SE2d 592) (1995) (summary judgment proper where evidence showed that plaintiff knew there was no cover or barricade on pit in which he fell). Accordingly, the trial court did not err in granting ISP a directed verdict in this case.

*Judgment affirmed. Johnson, J., and Senior Appellate Judge Harold R. Banke concur.*

DECIDED SEPTEMBER 9, 1996.

*Parkerson, Shelfer & Groff, David B. Groff, William P. Tinkler,*

*Jr.*, for appellants.
     *Forrester & Brim, James E. Brim III*, for appellee.