A97A0293. HALLBERG et al. v. FLAT CREEK ANIMAL CLINIC, P. C. et al.

(483 SE2d 671)

BIRDSONG, Presiding Judge.

Appellants Kay and John Hallberg appeal the order of the superior court granting summary judgment to appellees Flat Creek Animal Clinic, P.C. (clinic), Dr. Duane P. Tallman and Dr. Joseph A. Harper. This is a suit for damages and loss of consortium; Mrs. Hallberg was injured when she fell on a ramp at the clinic.

Appellant Kay Hallberg had visited the veterinary clinic on at least seven occasions prior to her fall; each time she used the clinic ramp without incident, as it was the sole manner of ingress and egress. On the morning of her fall, she ascended the ramp without incident and took all three of her pets to the clinic. She departed by going down the same ramp. She returned that afternoon to pick up her pets and again walked up the ramp. It was a sunny, hot day, and visibility was good. No objects obscured Mrs. Hallberg's view of the ramp. Mrs. Hallberg requested assistance in carrying the three pets from the building. A veterinary assistant picked up the cage containing Mrs. Hallberg's 14-pound cat. Mrs. Hallberg voluntarily took control of her two dogs inside the clinic. As she exited the premises with her two dogs, Mrs. Hallberg slipped on the ramp and was injured. The ramp was not slippery and did not appear to be wet at the time. The ramp, which had a metal handrail located on each side, looked the same on the day of her fall as it had on these other occasions.

Mrs. Hallberg testified in her deposition that although she had been up and down the ramp on several occasions and had paid attention to its rough surface, she had never thought about its steepness. Mrs. Hallberg's attention was directed to a photograph in which a seam-like crack is visible where the bottom of the ramp joins the concrete driveway. She admitted it was "true" that she was physically aware of the existence of this crack prior to the date of her fall. When asked to describe how her fall occurred, she testified: *"I've thought about it, and I've thought about it,* and I'm really not quite sure. . . . I could have tripped on this area [indicating the crack depicted in the photograph where the bottom of the ramp meets the driveway]. I'm not really sure." (Emphasis supplied.) All Mrs. Hallberg knows is that the leashed puppy pulled her down the ramp and at some point she fell. She thinks she fell "because the ramp was too steep," and she initially testified during her deposition there was no other reason for her fall. To her knowledge she did not trip or fall on a foreign substance. She was watching where she was going the entire time she was walking. At no point did she ever try to grab the handrail. She had noticed that morning that the railing was rusted and that one portion of it was not imbedded into the concrete; she does not recall either attempting to grab the railing to break her fall, or trying to bear her weight on either of the railings at any time that day. She does not know whether the rusted condition at the foot of one of the railings contributed to her fall. "Had the railing not been rusty, [Mrs. Hallberg] may have grabbed for it; but [she] knew the railing was rusty. It was very rickety. So [she does not] know."

Mrs. Hallberg states in a subsequent affidavit that she knew the ramp handrail was rusted and in a very poor condition; she concluded the handrail could not be used when ascending or descending

the ramp. She would have used the handrail had it been safe to use. When she started to fall, she would have "attempted" to grab hold of the handrail but she knew it would not help. Mrs. Hallberg further opines that had she been able to grab a stable handrail her fall would have been prevented.

In her affidavit Mrs. Hallberg also attempts to explain that, during her previous deposition testimony, she was nervous and tense and sometimes did not give complete answers; however now that she has had time to reflect, she has a clearer recollection of the day she fell and was injured. (Note: Mrs. Hallberg does not identify any specific portion of her deposition testimony that was caused either to be inaccurate or incomplete due to such nervous and tense condition. Further, the record reveals that Mrs. Hallberg swore to her deposition approximately five weeks after it was recorded and did not tender any changes thereto as to either form or substance.) Mr. Hallberg testified that, after his wife's fall, he had measured the ramp "because the ramp looks steep to [him]."

Appellants allege two defects existed in the ramp which caused Mrs. Hallberg's fall: an excessive ramp slope more than twice that allowed by county building codes, and appellees' failure to maintain a handrail in good operating condition for effective use by its patrons. The trial court, citing *Morrison v. Anderson*, 221 Ga. App. 396 (471 SE2d 329) and *Rose v. Kennesaw House*, 203 Ga. App. 648 (417 SE2d 379), granted appellees/defendants' summary judgment motion due to defendants' lack of superior knowledge. *Held*:

1. The rule of self-contradictory testimony, discussed in *Prophecy Corp. v. Charles Rossignol, Inc.*, 256 Ga. 27, 28 (1) (343 SE2d 680) "is a rule for construing testimony separate from those rules allocating burdens of proof at trial and on motion for summary judgment." "Whether such testimony is contradictory, and whether a reasonable explanation has been offered is a question of law." *Worley v. State Farm &c. Ins. Co.*, 208 Ga. App. 805, 807 (432 SE2d 244). The broad explanation in Mrs. Hallberg's affidavit for her self-contradictory deposition testimony does not constitute a reasonable explanation within the meaning of *Prophecy Corp.*, supra. The explanation does not identify any particular inconsistent testimony to which it would apply and at best constitutes a belated attempt to avoid the application of the *Prophecy Corp.* rule to noticeably contradictory deposition testimony. Moreover, a subsequent claim that self-contradiction was caused by a general state of nervousness at the time the deposition was taken, generally will not constitute a reasonable explanation of any self-contradictory statements allegedly arising therefrom. To accept such an explanation as being reasonable would totally erode the *Prophecy Corp.* rule; we decline to promote such an erosion.

Mrs. Hallberg testified she believed she fell because the ramp

was too steep, and that there was no other reason for her to fall. However, she also testified that she was "really not quite sure" how her fall occurred. As Mrs. Hallberg testified that, after repeatedly thinking about the incident, she did not know how she fell or what caused her to fall, any self-contradictory statements made by her to this testimony would be subject to the *Prophecy Corp.* rule.

2. In slip and fall cases, " '[p]roof of a fall, without more, does not give rise to liability on the part of a proprietor. There must be proof of fault on the part of the owner and ignorance of the danger on the part of the invitee.' " *Harpe v. Shoney's*, 203 Ga. App. 592, 593 (1) (417 SE2d 184). Mrs. Hallberg's testimony can be construed only as establishing that she does not know how she fell or what caused the fall.

Assuming without deciding that some proof of fault on the part of the appellees exists, the question remains whether Mrs. Hallberg was ignorant of the dangers existing on the premises. The hazards posed by both the handrails and the ramp were "static" conditions on the premises. "An owner or occupier of land has a duty of exercising ordinary care to keep the premises and approaches safe for invitees. OCGA § 51-3-1. The basis of the owner's liability is a superior knowledge of the condition that subjected the invitee to an unreasonable risk of harm. The hazard[s] in this case [are] static condition[s] which [are] not dangerous unless someone fails to observe [them]. . . . In cases involving static conditions, if the invitee knows of the condition or hazard there is no duty on the part of the proprietor to warn [her] and there is no liability for resulting injury because the invitee has as much knowledge as the proprietor does and then by voluntarily acting in view of his knowledge, assumes the risks and dangers incident to the known condition. Also, we have held that where[, as in this case,] there is nothing to obstruct or interfere with the invitee's ability to see the static defect, the owner is justified in assuming that the visitor will see it and realize the risks involved. A claim involving a static defect differs from other slip and fall cases in that when a person has successfully negotiated an alleged dangerous condition on a previous occasion, that person is presumed to have knowledge of it and cannot recover for a subsequent injury resulting therefrom." (Citations and punctuation omitted.) *MARTA v. Fife*, 220 Ga. App. 298, 300 (2) (469 SE2d 420).

(a) Appellants' contentions regarding the handrail do not give rise to a genuine issue of material fact which will render the trial court's grant of summary judgment to appellees erroneous. Mrs. Hallberg admits in judicio in both her deposition and her filed affidavit that she noticed the defective handrail and concluded that it was unsafe to use. Clearly, as to the handrail, appellants are charged with equal knowledge to that of the appellees. "Thus, appellant[s] cannot show appellee[s'] superior knowledge, which is necessary in

order for her to recover." *Harpe*, supra at 593 (1); compare *Souder v. Atlanta Family Restaurants*, 210 Ga. App. 291 (435 SE2d 764). "Appellees also were under no duty to warn Mrs. [Hallberg] of a condition of which she had equal knowledge. ' "An invitee is under an equal duty with the owner to use her sight to discover any defect or dangers." ' " *Rose v. Kennesaw House*, supra at 649. Further, after applying the rule of *Prophecy Corp.*, the evidence offered by appellants falls short of showing any causal relationship between the rusted handrail and her fall. Mrs. Hallberg expressly testified that she did not know whether the rusted handrail and her knowledge of its condition contributed to her fall. Compare *Harpe*, supra at 593 (2).

(b) The evidence here is uncontroverted that appellant had gone up and down the ramp on at least seven different occasions. Her view of the ramp on these occasions was not obscured. While she may not have realized that the slope of the ramp exceeded the county building code provisions, the steepness of the ramp was open and obvious to Mrs. Hallberg. Having successfully negotiated the alleged dangerous condition numerous times previously, Mrs. Hallberg is presumed to have knowledge of it and cannot recover for a subsequent injury resulting therefrom. *Rose*, supra at 649. Nothing prevented her "from appreciating the . . . steep slope of the ramp. Even when construed most favorably to her, the evidence demonstrates that the knowledge of the hazard attributable to [her] was at least equal to that of appellee[s]." *Manley v. Gwinnett Place Assoc.*, 216 Ga. App. 379, 382 (3) (454 SE2d 577); compare *Morrison v. Anderson*, supra; *Thomas v. Fabric Outlets*, 169 Ga. App. 175 (311 SE2d 852).

(c) *Metromedia Steakhouses Co. v. Ray*, 219 Ga. App. 716 (466 SE2d 618); *Martin v. Dunwoody-Shallowford Partners*, 217 Ga. App. 559 (458 SE2d 388); and *Stephens v. Ernie's Steakhouse &c.*, 215 Ga. App. 166 (450 SE2d 275) are distinguishable and are not controlling.

(d) The uncontroverted evidence shows that regardless whether Mrs. Hallberg asked the assistant to take control of one of her dogs, she voluntarily elected to take both dogs down the ramp at one time. Appellants' claim of distraction must fail. First, Mrs. Hallberg affirmatively testified she was looking where she was going the entire time she was walking. Secondly, not only does Mrs. Hallberg fail to show she was distracted at the time of her fall but any existing distraction would have been self-induced by her own election to proceed down the ramp with both dogs. A defendant cannot take the benefit of a self-induced distraction to excuse her lack of care for her own safety. *Redding v. Sinclair Refining Co.*, 105 Ga. App. 375, 379 (124 SE2d 688).

(e) Appellants' reliance on the necessity rule as an exception, which if applicable would permit recovery notwithstanding her equal knowledge of the danger (see generally *Carey v. Bradford*, 218 Ga.

App. 325 (461 SE2d 290)), is misplaced. It is now well established that this exception is applicable only to tenants of a dwelling — who otherwise might become captives in their own homes. *Hohnerlein v. Thomas*, 186 Ga. App. 282, 283 (367 SE2d 95), citing *Taylor v. McDonald*, 183 Ga. App. 320, 321 (359 SE2d 1).

*Judgment affirmed. Ruffin and Eldridge, JJ., concur.*

DECIDED MARCH 5, 1997.

*Webb & Lindsey, Eric K. Maxwell*, for appellants.

*Long, Weinberg, Ansley & Wheeler, Alan L. Newman, Alan M. Maxwell*, for appellees.