A98A1051. HANNAH v. HAMPTON AUTO PARTS, INC. et al.
(506 SE2d 910)

RUFFIN, Judge.

In this premises liability action, Ollis A. Hannah sued Hampton Auto Parts, Inc. and the store's owner, Steve Morris, for injuries Hannah received when he fell down steps at the automobile parts store. The trial court granted the defendants' summary judgment, and Hannah appeals. We affirm.

" 'To prevail at summary judgment under OCGA § 9-11-56, the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to the non-moving party, warrant judgment as a matter of law. OCGA § 9-11-56 (c). A *defendant* may do this by showing the court that the documents, affidavits, depositions and other evidence in the record reveal that there is no evidence sufficient to create a jury issue on at least one essential element of plaintiff's case. . . . If the moving party discharges this burden, the nonmoving party cannot rest on its pleadings, but rather must point to specific evidence giving rise to a triable issue. OCGA § 9-11-56 (e).' [Cit.] Our review of an appeal from summary judgment is de novo. [Cit.]" (Emphasis in original.) *Cooper v. Corporate Property Investors*, 220 Ga. App. 889-890 (470 SE2d 689) (1996).

Viewed in the light most favorable to Hannah, the nonmovant, the evidence shows that Hannah was 73 years old at the time of his fall on September 7, 1994. Hannah testified that for three to five years before his fall, it had been his usual practice to arrive at the auto parts store around 7:30 a.m. five to six mornings a week, sit around the store, and talk with other older people who came to the store to visit. Hannah admitted he did not seek Morris' permission to come to the store in the mornings, but came of his own accord. He

stated he went to the store to get out of his house and have something to do. Hannah testified that he would often open and close the store, assist store customers, walk to a local cafe to buy Morris tea, and take out the trash for Morris. However, he acknowledged he was not an employee of the store.

Hannah testified that on September 7, 1994, the day of his fall, he went to the store at 7:30 a.m. to visit and not to transact business there. After he arrived, Morris asked Hannah to take the trash out to the dumpster. This required Hannah to exit the back door of the store and walk down two steps to the alley. The two steps, which were made of one piece of metal, were not attached to the building foundation. Rather, the steps leaned against the foundation and were supported underneath by a brick base.

Hannah testified that as he stepped down on the right side of the first step, the steps moved under him, causing him to fall on his back. Hannah stated that he had successfully negotiated the steps ten to twenty times in the past. He admitted the steps had never shaken or slipped underneath him on these other occasions, and that he had never had any trouble negotiating the steps in the past. Although Hannah said he looked at the steps every time he traversed them, he never knew the steps were free standing until after the fall. Hannah further testified that before his fall, he never complained to Morris or anyone else that the steps needed to be fixed or secured, and that nothing about the steps over the years had raised any concerns in his mind regarding his safety in using them. Moreover, he had never heard anyone complain about the condition of the steps. Hannah presented the affidavit of a building inspector who stated the steps violated county building codes.

Morris testified the metal steps were in place in 1980 when he first occupied the building. He stated that employees, customers, and social guests had used the steps from 1980 until the date of Hannah's fall and had never complained "that the stairs were unstable, insecure, deteriorated or otherwise in a dangerous or defective condition." Moreover, Morris testified that between 1980 and September 7, 1994, no one other than Hannah had ever fallen or been injured due to the condition of the steps. Morris said he had used the steps frequently since 1980 and had never noticed that they were unstable or unsecured.

Hannah contends he was an invitee at the time of his injury, and thus the defendants owed him a duty to exercise ordinary care in inspecting the steps and maintaining them in a safe condition. See OCGA § 51-3-1. The defendants, however, assert Hannah was a licensee and that they were liable only for a wilful and wanton injury. See OCGA § 51-3-2. "While [Hannah] and defendants correctly characterize the duty of care owed by an owner or occupier of land to invi-

tees and licensees, it is a distinction without a difference in this case. This is so because 'it is usually wilful or wanton not to exercise ordinary care to prevent injuring a person who is actually known to be, or may reasonably be expected to be, within the range of a . . . hidden peril on one's premises. Thus(,) as to a licensee(,) ordinary care and diligence must be used to prevent injuring him after his presence is known or reasonably should be anticipated. After the presence of the licensee is known, exactly the same acts of caution may be required of the owner to satisfy the legal duty as would be necessary if the licensee were invited.' [Cit.]" *Cooper*, supra at 891.

In this case, it is clear that Morris knew of Hannah's presence in the automobile parts store on the day in question. Morris was also aware that Hannah had to traverse the metal steps in order to take out the trash as Morris had requested. "Accordingly, we find that even if [Hannah] was a licensee when [he] fell, the defendants owed [him] the same duty as they would have owed if [he] were an invitee." Id. at 892.

In premises liability cases, "proof of a fall, without more, does not give rise to liability on the part of a proprietor." (Punctuation omitted.) *Hallberg v. Flat Creek Animal Clinic*, 225 Ga. App. 212, 215 (2) (483 SE2d 671) (1997). "The true basis of a proprietor's liability for personal injury to an invitee is the proprietor's superior knowledge of a condition that may expose the invitees to an unreasonable risk of harm. [Cit.] Recovery is allowed only when the proprietor had knowledge and the invitee did not. [Cit.]" *Parks-Nietzold v. J. C. Penney*, 227 Ga. App. 724, 726 (2) (490 SE2d 133) (1997). See also *Cooper*, supra.

In this case, it is clear that the metal steps which had been in place since 1980 were a static condition. " 'A claim involving a static defect differs from other slip and fall cases in that when a person has successfully negotiated an alleged dangerous condition on a previous occasion, that person is presumed to have knowledge of it and cannot recover for a subsequent injury resulting therefrom.' [Cit.]" *Hallberg*, supra at 215 (2). See also *Spires v. Hall*, 230 Ga. App. 357, 359 (1) (496 SE2d 501) (1998); *Dickman v. South City Mgmt.*, 229 Ga. App. 289 (494 SE2d 64) (1997) (physical precedent only) (prior successful negotiation of steps precluded recovery). Here, the evidence shows that the defendants were unaware of the alleged defective condition of the steps. Morris and many other people, including Hannah, had successfully traversed the steps without injury many times over a 14-year period and never complained about the condition of the steps. Moreover, the evidence is clear that Hannah had used the steps ten to twenty times without incident. Accordingly, the evidence shows the defendants did not have superior knowledge of the alleged defect. Furthermore, because Hannah had successfully negotiated the steps

on several occasions in the past, he cannot recover for his subsequent injury. *Hallberg*, supra.

"We need not decide whether the [steps] constituted a building code violation, because, even assuming [they] did, it would show only negligence per se." *Parks-Nietzold*, supra at 726. Hannah and the defendants had equal knowledge of the static condition of the steps, and "[t]he equal knowledge rule would preclude recovery even if [Hannah] could show that the [maintenance of the steps] was negligence per se as a violation of the building code." Id.

While this Court is to remain mindful "that the 'routine' issues of premises liability, i.e., the negligence of the defendant and the plaintiff, and the plaintiff's lack of ordinary care for personal safety are generally not susceptible of summary adjudication," this is one of those cases in which the evidence is plain and palpable that the defendants are not liable. *Robinson v. Kroger Co.*, 268 Ga. 735, 748 (493 SE2d 403) (1997).

*Judgment affirmed. Pope, P. J., and Beasley, J., concur.*

DECIDED SEPTEMBER 16, 1998.

*James T. Chafin III*, for appellant.
*Hawkins & Parnell, William H. Major III, David H. Wilson*, for appellees.