A98A1236. HERRIN v. PEECHES NEIGHBORHOOD GRILL & BAR, INC. et al.
(509 SE2d 103)

POPE, Presiding Judge.

Joseph Kerwin Herrin filed suit against Peeches Neighborhood Grill & Bar, Inc., C-A-M Development Corporation ("C-A-M"), and other defendants which were subsequently dismissed from the suit, for injuries sustained when he fell from a ladder. Herrin claimed that Peeches and C-A-M were negligent in erecting and maintaining the ladder, which Herrin claimed was improperly affixed to the exterior wall of the premises. Peeches and C-A-M filed a motion for summary judgment; Herrin filed a cross-motion for partial summary judgment. The superior court granted the defendants' motion, denied Herrin's motion, and Herrin appeals. For the following reasons, we affirm.

The undisputed facts established that on the date of Herrin's fall, defendant Peeches was the sole proprietor of "Peeches at the Track" restaurant in Gainesville; C-A-M owned the building in which the restaurant was located. On March 15, 1994, Peeches arranged for

Herrin, an independent contractor, to come to the restaurant to repair a walk-in freezer. Herrin needed to go onto the roof of the building to make the repairs. To reach the roof, he climbed the ladder which was affixed to the exterior of the rear of the building.

Herrin carried his freon tank, which weighed under ten pounds, with him up the ladder. He climbed onto the roof without incident. When coming down the ladder he fell and sustained the injuries which are the subject of this lawsuit. Herrin claimed that his fall occurred because he was unable to maintain a firm grasp and stance on the rungs because the ladder was too close to the building.

It was undisputed that Herrin fell from the portion of the ladder near the top of the building. Herrin estimated that he had traversed three or four rungs before his fall.

James Roper, the contractor who installed the ladder at the request of C-A-M, testified that he had been responsible for renovating the building in which Peeches was located. According to Roper, during the renovations the City inspector informed him that he needed to extend the exterior ladder before a certificate of occupancy could be issued. Roper stated that the ladder extension was completed pursuant to the specific instructions of the City inspector, who then approved the extension and issued a certificate of occupancy. Roper recalled that although the president of C-A-M, Milton Robson, was frequently on the premises and toured the site with him, he did not think that Robson had ever climbed the ladder himself.

With his complaint, Herrin filed the affidavit of a professional engineer, Lewis Waldrop, who stated that the clearance between the center of the ladder's rungs and the wall was about six inches for most of the distance of the ladder from the ground to the roof. Waldrop stated: "at the top of the ladder, the roof protrudes outward from the wall of the building, and the distance from the center of the ladder's rungs to this portion of the roof is between three and one quarter and four inches." He also stated that at the time of Herrin's fall the City of Gainesville had adopted the National Electric Code and that the American National Standards Institute standards ("ANSI") provided that the distance from the center of the rungs to the wall should not be less than seven inches. He opined that the relevant professional employees were negligent in failing to properly design, construct, and inspect the ladder to bring it into compliance with the ANSI standard. He also opined that Herrin fell from the ladder because of the insufficient clearance.

Waldrop later provided an affidavit in which he stated that the ladder at Peeches did not comply with the rung clearance and step-across distance requirements of the ANSI standards or of the Occupational Safety & Health Administration ("OSHA") standards. Waldrop stated that because the ladder did not provide safe access to the

roof, it also violated the National Electric Code. Waldrop stated that Herrin's fall was caused by the violations of ANSI and OSHA standards, i.e., that there was insufficient clearance between the ladder and the wall.[1]

There was evidence from the city inspector that a certificate of occupancy would issue only when the provisions of the National Electric Code regarding sufficient clearance were met. Thus, the city inspector testified that the issuance of the certificate of occupancy in this case indicated that the National Electric Code requirements were met.

It was undisputed Herrin had climbed the subject ladder on several occasions before this fall without incident. At his deposition, Herrin estimated that he had used the ladder to get to the roof at least twice, and maybe as many as five times. Indisputably, he climbed the ladder to the roof 15 or 20 minutes before his fall. By his own account, Herrin had already traversed three or four rungs descending the ladder before his fall.

Herrin submitted an affidavit in which he stated that at the time of his accident he was unaware of the insufficient clearance of the ladder and that he was unaware that the ladder was dangerous. Nevertheless, at his deposition, Herrin stated that during his previous use of the ladder he *had* experienced problems with the ladder. Specifically, he had previously had a problem: "[j]ust trying to get turned around and get started down because of the way that it was situated." He stated that other ladders were "more stable at the top" were easier to use. Herrin admitted that the condition of the ladder, the building and the roof was unchanged on the incident date from the previous occasions.

The evidence was undisputed that Peeches had never received reports of any falls from the ladder, nor any complaints about the ladder before Herrin's fall. Similarly, there was no evidence that C-A-M was aware of any incidents involving the ladder before Herrin's fall. Further, no evidence was presented that Peeches or C-A-M had notice of violations of ANSI, OSHA or the National Electric Code standards before Herrin's fall.

1. In several enumerations of error, Herrin claims that the superior court erred in various ways by failing to correctly apply *Robinson v. Kroger Co.*, 268 Ga. 735 (493 SE2d 403) (1997), and by concluding that the defendants were not negligent. Herrin claims that the court

---

[1] Herrin also filed the affidavit of James Stephens, a registered architect, who stated that Herrin's fall was because of the insufficient clearance between the rungs of the ladder and the roof and wall of the building. Stephens stated that the architect for the project was negligent in failing to appropriately design the ladder for access to the electrical equipment on the roof.

erroneously concluded that he had equal or superior knowledge of the defective condition of the ladder and that the court erred in determining that defendants lacked actual or constructive knowledge of the ladder's condition. The premises liability rules set forth in *Robinson v. Kroger Co.*, 268 Ga. 735, apply to this case. See, e.g., *Hannah v. Hampton Auto Parts*, 234 Ga. App. 392 (506 SE2d 910) (1998) (*Robinson* applied in a plaintiff's suit for fall from metal stairs at the back of a store); *Yeh v. Arnold*, 232 Ga. App. 725 (503 SE2d 645) (1998) (*Robinson* applied to plaintiff's suit arising from fall on exterior stairs which he claimed were slippery and unevenly spaced). In *Robinson*, our Supreme Court stated: "in order to recover for injuries sustained in a slip-and-fall action, an invitee must prove (1) that the defendant had actual or constructive knowledge of the hazard; and (2) that the plaintiff lacked knowledge of the hazard despite the exercise of ordinary care due to actions or conditions within the control of the owner/occupier. However, the plaintiff's evidentiary proof concerning the second prong is not shouldered until the defendant establishes negligence on the part of the plaintiff — i.e., that the plaintiff intentionally and unreasonably exposed self to a hazard of which the plaintiff knew or, in the exercise of ordinary care, should have known." *Robinson v. Kroger Co.*, 268 Ga. at 748-749.

"*Robinson* also confirmed that under *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991), a defendant moving for summary judgment need no longer affirmatively disprove the nonmoving party's case; instead the burden on the moving party may be discharged by pointing out by reference to the record that there is an absence of evidence to support the nonmoving party's case. Although *Robinson* readjusted this burden with regard to the second element of the cause of action (whether plaintiff lacked knowledge of hazard despite ordinary care), the burden remained the same with regard to the first element. Where defendant points to an absence of evidence on the first element, plaintiff must present evidence the defendant had superior actual or constructive knowledge of the hazard, or else suffer summary judgment." (Citations and punctuation omitted.) *Hardee's Food Systems v. Green*, 232 Ga. App. 864, 865 (502 SE2d 738) (1998). In other words, "*Robinson* emphasized the fundamental basis for an owner or occupier's liability — that party's superior knowledge of the hazard encountered by the plaintiff." (Citations and punctuation omitted.) *Hardee's Food Systems v. Green*, 232 Ga. App. at 864.[2]

As stated in *Robinson*, the defendant's knowledge of the defect

---

[2] Our inquiry here is not resolved simply because the defendants did not install the ladder. " 'Because the owner or occupier's duties to keep the premises and approaches safe are statutory (OCGA § 51-3-1), those duties are non-delegable even though the owner has a con-

may be actual or constructive. "[C]onstructive knowledge may be based either on evidence that the dangerous condition lasted so long that the defendant should have discovered it, or on evidence that an employee of defendant was in the immediate vicinity and could have easily seen the problem. [Cit.]" *Collins v. East R. S., Inc.*, 228 Ga. App. 627 (1) (492 SE2d 351) (1997).

In this case Herrin presented no evidence that either the contractor who extended the ladder or the defendants were aware that the ladder was defective. Further, Herrin presented no evidence that either the contractor or the defendants *should* have known that the ladder was defective. The evidence here showed only that the defendants had every reason to believe that the ladder *did* comply with relevant regulations: it had been carefully inspected, and after modifications, the certificate of occupancy on the building had been issued by the city. The extension to the ladder which Herrin claimed was defective was added specifically so that the ladder would pass the city's inspection. In fact, testimony of the city inspector showed that issuance of the certificate of occupancy indicated that the National Electric Code requirements were met.

In short, there was no reason that defendants should have discovered the defective positioning of the ladder against the wall. Compare *Flournoy v. Hosp. Auth. of Houston County*, 232 Ga. App. 791 (504 SE2d 198) (1998). Accordingly, the court properly concluded that defendants lacked actual or constructive knowledge of the defect.

Although we are aware that under *Robinson*, the lack of evidence of defendants' knowledge of the defect ends our inquiry, given the circumstances of this case we also examine Herrin's role in this incident. First, Herrin's status as an independent contractor is important. For "[a]n independent contractor is expected to determine for himself whether his place of employment is safe or unsafe, and ordinarily may not recover against the owner for injuries sustained in the performance of the contract." (Citations and punctuation omitted.) *Hudson v. Santangelo*, 228 Ga. App. 768, 774 (3) (492 SE2d 673) (1997). Moreover, it is clear that the allegedly defective ladder was a static condition. "A claim involving a static defect differs from other slip and fall cases in that when a person has successfully negotiated an alleged dangerous condition on a previous occasion, that person is presumed to have knowledge of it and cannot recover for a subsequent injury resulting therefrom." (Citations and punctuation omitted.) *Hannah v. Hampton Auto Parts*, 234 Ga. App. at 394.

---

tract for another party to provide [the renovations]. OCGA § 51-2-5 (4); [cits.]'" *Johnson v. Kimberly Clark*, 233 Ga. App. 508, 510 (___ SE2d ___) (1998).

By his own admission, Herrin had traversed the ladder at least twice prior to the date of his fall. Indisputably, he had climbed the ladder to the roof 15 or 20 minutes before his fall. In addition to his status as a contractor and previous climbs on the ladder, Herrin had experienced previously the precise problem with the ladder's positioning which he claims caused his fall. Even knowing of this problem, he climbed down the ladder laden with the near-empty freon tank. Given all of these facts, it is clear that defendants did not have superior knowledge of the hazard.

2. Herrin claims that the superior court incorrectly granted summary judgment in light of the evidence of violations of ANSI, OSHA and National Electric Code standards. Again, we reject Herrin's arguments.[3] "Negligence per se is not liability per se. Negligence, it should be remembered, is in itself only one of the essential elements prerequisite to a cause of action in a given case." *Parks-Nietzold v. J. C. Penney*, 227 Ga. App. 724, 726 (2) (490 SE2d 133) (1997); see also *Hannah v. Hampton Auto Parts*, 234 Ga. App. at 395. In this case, Herrin failed to present evidence of defendants' knowledge of the defect and summary judgment was proper. Compare *Davis v. GBR Properties*, 233 Ga. App. 550 (504 SE2d 204) (1998) (factual issue existed when ANSI standards were violated because handrail did not extend to the end of a handicapped-accessible ramp and defendants "were charged with knowledge of their ramp"); *Flournoy v. Hosp. Auth. of Houston County*, 232 Ga. App. 791 (factual issue presented when the slope on hospital ramp did not conform to standard building code and non-skid coating on the ramp had worn away); *Hardeman v. Spires*, 232 Ga. App. 694 (503 SE2d 588) (1998) (factual issue presented after plaintiff fell on wet ceramic porch tiles and there was evidence of violation of building code requirement that a guardrail be installed on the front porch).

3. In two additional enumerations, Herrin argues that the court erred in denying his motion for partial summary judgment because evidence that the ladder violated the National Electric Code and OSHA standards established negligence per se. For the reasons above, this argument is without merit.

*Judgment affirmed. Beasley and Ruffin, JJ., concur.*

---

[3] This result comports with pre-*Robinson* cases in which a plaintiff was barred from recovery *regardless of alleged regulatory violations*, if he had equal or superior knowledge as the landowner of a dangerous condition and failed to exercise ordinary care for his own safety. See, e.g., *Brantley v. Custom Sprinkler Systems*, 218 Ga. App. 431, 432-433 (2) (461 SE2d 592) (1995); *Sumner v. Ideal Steel Products*, 222 Ga. App. 681, 682 (475 SE2d 708) (1996).

DECIDED NOVEMBER 9, 1998 —
RECONSIDERATION DENIED DECEMBER 2, 1998

*Cathey & Strain, James E. Staples, Jr., James R. Acrey*, for appellant.

*Weissman, Nowack, Curry & Wilco, Leigh M. Wilco, Vicki V. Mott*, for appellees.