A99A1033. VAL D'AOSTA COMPANY v. CROSS et al.
(526 SE2d 580)

ELDRIDGE, Judge.

This case is a premises liability action, involving a user with disabilities in a wheelchair. The issue presented is whether mere prior use by the disabled person gives her equal knowledge to the owner/occupier of a specific static defect that the regulations and guidelines prohibit as dangerous, when the owner/occupier is under a continuing statutory mandate to provide a safe handicap access ramp, defect-free and compliant with detailed regulations and guidelines to protect the disabled in use of the ramp, and when, in fact, the ramp is non-compliant, creating a static dangerous defect specifically prohibited by the regulations. We find that the owner/occupier has superior knowledge under such facts and circumstances.

Plaintiff Roberta Cross, who is confined to a wheelchair by arthritis, stayed at a motel owned and operated by Val D'Aosta Com-

pany. To gain access to her room, Cross had to use one of two disability access ramps, and the ramp nearest her room had a leading edge without beveling where it met the parking lot surface and had a difference in levels between the ramp and the surrounding parking lot that was greater than one-quarter inch, creating a ramp lip. Such conditions constituted non-compliance with the American National Standards Institute ("ANSI") standards, as testified to by plaintiffs' architect-expert witness by affidavit. This ramp was ascended and descended several times by Cross in her wheelchair with assistance from relatives during her stay without a problem. On return to her room, while being pushed by a relative, the front wheels of the wheelchair caught on the ramp lip for the first time, turning the front wheels so that they stopped moving forward and throwing Cross out of the wheelchair and injuring her. The specific guidelines and regulations prohibited the small lip between the ramp and the walk to prevent this very risk of just such occurrence.

Val D'Aosta Company contends that the trial court erred in denying its motion for summary judgment. We do not agree.

As a matter of law, Val D'Aosta Company, as owner of a place of public accommodation and a public building, had knowledge of the condition of the disabled access ramp that was superior to the knowledge of the plaintiff, as a person with disabilities who had merely used the ramp previously. This is because OCGA § 30-3-8, with criminal sanctions for non-compliance, mandated compliance with any regulation promulgated under OCGA § 30-3-1 et seq. by the owner/occupier and required specific knowledge of the condition of the ramp and its compliance or non-compliance by the owner/occupier. ANSI specifications A117.1-1986 and the Americans With Disabilities Act Accessibility Guidelines for Buildings & Facilities constitute the regulations with which the public building owner/occupier must comply to avoid criminal sanctions and know for the protection of the elderly and persons with disabilities.[1] As owner/occupier of this motel, Val D'Aosta Company had such superior knowledge through its employees, because the mandate applied to "[a]ny person, firm, or corporation who violates this chapter." OCGA § 30-3-8. Clearly, a jury issue arises that Cross came within the definition of a person with disabilities, being wheelchair-confined by her musculo-skeletal condition.[2]

Under the first of the two prongs of *Alterman Foods v. Ligon*, 246

[1] OCGA § 30-3-2 (1), (3); see also Americans With Disabilities Act ("ADA"), 42 USCS § 12101 et seq., Pub. L. No. 101-336, Title II, § 209 (104 Stat. 337) (1990); 36 CFR § 1191, App. A, pp. 648, 694-697 (1994); 47 FR 1393, 1396.

[2] OCGA § 34-6A-2 (3), (5), (7), and (8) must be construed in pari materia with OCGA § 30-3-1 et seq. to define a person with disabilities. See also 42 USCS § 12102 (2); 29 CFR § 1630.2 (h); 34 CFR § 104.3 (j) (2) (i); *Torcasio v. Murray*, 57 F3d 1340, 1353-1354 (4th Cir. 1995).

Ga. 620, 622-623 (272 SE2d 327) (1980), the owner/occupier must have superior knowledge of the static condition on the premises that is alleged to create a dangerous defect as well as be negligent in creating or maintaining such condition. As to the superior knowledge aspect of this first prong, the statutes and regulations satisfy such requirement by mandating such knowledge in the owner/occupier as set forth in the guidelines and regulations. See *Davis v. GBR Properties*, 233 Ga. App. 550, 553-554 (1) (504 SE2d 204) (1998) (Eldridge, J., concurring specially); *Flournoy v. Hosp. Auth. of Houston County*, 232 Ga. App. 791, 794 (504 SE2d 198) (1998) (Eldridge, J., concurring specially). Thus, the owner had superior knowledge over a disabled person's prior use.

To recover, the plaintiff must show at trial that the statutes and regulations were intended to protect the class of persons from certain risk of injury and that she came within the ambit of the act, protecting her from the prohibited acts or omissions of the defendant. See *Walter v. Orkin Exterminating Co.*, 192 Ga. App. 621, 624 (3) (385 SE2d 725) (1989). The facts and circumstances of this case create a factual issue as to the existence of negligence per se, because a jury must determine whether a violation of the statutes and regulations occurred and whether such violation constituted the proximate cause or a concurrent proximate cause of any injury and damages. See *Keith v. Beard*, 219 Ga. App. 190, 192 (1) (464 SE2d 633) (1995). "To prevail on a negligence per se claim, a causal relation between the violation of the statutory duty and the injuries sustained thereby must be shown. [Cit.]" *Walter v. Orkin Exterminating Co.*, supra at 624. See also *Central Anesthesia Assoc. v. Worthy*, 254 Ga. 728, 730 (1) (333 SE2d 829) (1985). As to the second prong of *Alterman Foods*, under the facts of this case, *Robinson v. Kroger Co.*, 268 Ga. 735, 748-749 (493 SE2d 403) (1997), such holding directs that a jury issue exists as to the exercise of ordinary care for her own safety by the plaintiff under the circumstances, getting the case past the motion for summary judgment. See *Flournoy v. Hosp. Auth. of Houston County*, supra at 792-793; see also *Davis v. GBR Properties*, supra at 552-553. Thus, the trial court properly denied the motion for summary judgment.

*Judgment affirmed. Johnson, C. J., McMurray, P. J., and Smith, J., concur. Andrews, P. J., Pope, P. J., and Ruffin, J., dissent.*

ANDREWS, Presiding Judge, dissenting.

Because the majority has based its decision on a theory which was not argued below and is not supported by binding legal authority in this State, I must dissent.

The complaint alleged negligence only in that "[t]his ramp did not run flush with the level ground, and as such, was negligently con-

structed and maintained" and that this negligence caused Cross' wheelchair to turn over while she was accessing the ramp. There is no reference in the complaint to the Americans With Disabilities Act or OCGA Chapter 3, Title 30, Access To & Use of Public Facilities by Persons With Disabilities Act.

In architect Yielding's affidavit in opposition to the motion for summary judgment, he opined only that the ramp was not in compliance with the applicable American National Standards Institute provisions because the leading edge of the ramp was not beveled and the difference in levels between the ramp and the surrounding parking lot was greater than one-quarter inch. There is no reference in that affidavit to the ADA and its requirements or the Georgia Act.

The only reference in the record to the ADA was during the deposition of the motel's general manager when he was asked his familiarity with the ADA. There is nothing in the pleadings that would put defendant on notice that Cross was relying on the ADA; there is no admissible evidence in the record regarding the specific provision or provisions of the ADA or federal regulations supposedly being relied upon; and there was no request that the court take judicial notice of any of these provisions. See *Graves v. State*, 269 Ga. 772, 774 (2) (504 SE2d 679) (1998); *Central of Ga. R. Co. v. Gwynes*, 153 Ga. 606, 607 (113 SE 183) (1922); *P.G.L. & C.C. Employees Credit Union v. Kimball*, 221 Ga. App. 108 (470 SE2d 501) (1996).

Even overlooking these deficiencies, there is no indication in either the federal ADA or Georgia's statute that provides a private cause of action. See *Smith v. Wal-Mart Stores*, 167 F3d 286 (6th Cir. 1999). As pointed out in *Smith*, there is no damages remedy for violation of Title III of the ADA. The enforcement statute is 42 USCA § 12188 which incorporates the remedies of 42 USCA § 2000a-3. That section does not include money damages.

While the Sixth Circuit opines in *Smith* that the Supreme Court of Georgia would conclude that Smith had a private cause of action against Wal-Mart under Georgia law for its failure to implement ADA-mandated requirements designed for the protection of disabled persons, such a conclusion is not binding on Georgia courts, *Russell v. Parkford Mgmt. Co.*, 235 Ga. App. 81 (508 SE2d 454) (1998), and there is no Georgia authority recognizing such a private cause of action.

Even assuming the existence of such a private cause of action, however, a violation of the ADA would amount only to negligence per se.

> Negligence per se is not liability per se. Negligence, it should be remembered, is in itself only one of the essential elements prerequisite to a cause of action in a given case. *Parks-*

*Nietzold v. J. C. Penney*, 227 Ga. App. 724, 726 (2) (490 SE2d 133) (1997); see also *Hannah v. Hampton Auto Parts*, 234 Ga. App. [392,] 395 [506 SE2d 910) (1998)].

(Punctuation omitted.) *Herrin v. Peeches Neighborhood Grill &c.*, 235 Ga. App. 528, 533 (2) (509 SE2d 103) (1998).

> In premises liability cases, proof of a fall, without more, does not give rise to liability on the part of a proprietor. (Punctuation omitted.) *Hallberg v. Flat Creek Animal Clinic*, 225 Ga. App. 212, 215 (2) (483 SE2d 671) (1997). The true basis of a proprietor's liability for personal injury to an invitee is the proprietor's superior knowledge of a condition that may expose the invitees to an unreasonable risk of harm. (Cit.) Recovery is allowed only when the proprietor had knowledge and the invitee did not. (Cit.) *Parks-Nietzold v. J. C. Penney*, [supra at 726 (2)]. See also *Cooper [v. Corporate Property Investors*, 220 Ga. App. 889-890 (470 SE2d 689) (1996)]. . . . A claim involving a static defect differs from other slip and fall cases in that when a person has successfully negotiated an alleged dangerous condition on a previous occasion, that person is presumed to have knowledge of it and cannot recover for a subsequent injury resulting therefrom. (Cit.) *Hallberg*, supra at 215 (2). See also *Spires v. Hall*, 230 Ga. App. 357, 359 (1) (496 SE2d 501) (1998); *Dickman v. South City Mgmt.*, 229 Ga. App. 289 (494 SE2d 64) (1997) (physical precedent only) (prior successful negotiation of steps precluded recovery). . . . We need not decide whether the [ramp] constituted a building code violation, because, even assuming [it] did, it would show only negligence per se. *Parks-Nietzold*, supra at 726.

(Punctuation omitted.) *Hannah v. Hampton Auto Parts*, supra at 394-395. See also *Hart v. Brasstown View Estates*, 234 Ga. App. 389, 390 (506 SE2d 896) (1998) (physical precedent).

In addition to the evidence cited by the majority, the record reflects that Cross had been wheelchair-bound since 1980 due to rheumatoid arthritis and other medical problems, although she had never been declared "disabled" by Social Security or any insurance company. At the time of the accident in October 1995, she was 54 years old, 5′ 5″ tall and weighed approximately 350 pounds. According to Cross, she was denied disability by Social Security after the accident.

Cross and her daughter Renee arrived at Comfort Inn around dusk on Monday, October 9. They had requested a wheelchair-

accessible room and were registered in one near one of two handi-capped-accessible ramps at the motel. Renee parked the van next to the ramp nearest their room, let down Cross' lift on her van, and rolled her off the lift and up the ramp without difficulty.

At that time, Cross noticed that the ramp "wasn't snug to the ground like most ramps" and "wasn't as smooth as a ramp normally is." That Monday, Cross used the ramp a total of three times and on Tuesday a total of four times. Wednesday, she traversed the ramp at least twice. On Thursday, another daughter and Cross' 15-year-old grandson arrived. Cross successfully negotiated the ramp five times that day, including one trip after lunch when her grandson pushed her up the ramp without difficulty.

On Thursday evening, the group returned to the motel around 11:00 p.m. Cross deposed that the lighting was adequate, the way it had been all week. Her grandson had pushed her in the chair many times before and went to assist Cross after she exited the van. He said she had begun moving along with her feet "and I can help push her." He said he was pushing at a normal pace and

> just like at the bottom on the right-hand side, it either was a rock or crack or whatever was at the bottom of the ramp, it's like the wheel, as it was going up, it turned. And when it turned, it stopped all movement . . . and when it stopped all movement, I kept going because I didn't know all movement was stopped when the wheel had turned. . . . [I]t's like she just slid out. She didn't just catapult out. She slid out of the chair.

Cross stated that "when he pushed me, the ramp didn't accept the wheels in the — I don't know what happened. I just know I was in the chair one minute and I was on the sidewalk another." Asked specifically what caused her fall, Cross stated "I have no idea."

Here, Cross acknowledges that, from the first time she negotiated the ramp on Monday, she was aware that the ramp was not level with the adjoining parking lot and was not as smooth as these ramps usually are. Therefore, her knowledge was at least equal to that of the defendants, and the equal knowledge rule precludes recovery even if she has shown that the ramp, as constructed, violated the ANSI standards thereby showing negligence per se by defendant. *Mechanical Equip. Co. v. Hoose*, 241 Ga. App. 412 (523 SE2d 575) (1999) (fall on crosstie steps repeatedly previously negotiated, plaintiff's equal knowledge precluded liability); *Hannah*, supra; *Hart*, supra.

While this Court remains mindful that "the routine issues of premises liability, i.e., the negligence of the defendant and the plain-

tiff, and the plaintiff's lack of ordinary care for personal safety are generally not susceptible of summary adjudication," in my opinion, this is one of those cases in which the evidence is plain and palpable that the defendant is not liable and was entitled to summary judgment. *Mechanical Equip. Co.*, supra; *Hannah*, supra; see also *Johnson v. J. H. Harvey Co.*, 240 Ga. App. 265 (523 SE2d 95) (1999) (customer tripped on concrete ramp over which she had walked on at least 50 prior occasions, store entitled to summary judgment); *Wright v. JDN Structured Finance*, 239 Ga. App. 685 (522 SE2d 4) (1999) (customer fell over high curb to sidewalk, an open and obvious condition of which the owner had no duty to warn).

I am authorized to state that Presiding Judge Pope and Judge Ruffin join in this dissent.

DECIDED DECEMBER 3, 1999 —
RECONSIDERATION DENIED DECEMBER 17, 1999.

*Clyatt, Clyatt & DeVaughn, Robert M. Clyatt, Sandra K. Sanders, Carl G. Fulp III*, for appellant.

*Hodges, Erwin, Hedrick & Coleman, David W. Orlowski*, for appellees.