### A01A0289. KITCHENS et al. v. KEADLE LUMBER ENTERPRISES, INC.
(549 SE2d 781)

RUFFIN, Judge.

Peggy Kitchens ("Kitchens") and her husband sued Keadle Lumber Enterprises, Inc. ("Keadle") for damages allegedly sustained when Kitchens fell on Keadle's property. The trial court granted Keadle's motion for summary judgment, and the Kitchenses appeal. For reasons that follow, we reverse.

To prevail on summary judgment, the movant must demonstrate that no genuine issues of material fact remain and "that the undisputed facts, viewed in the light most favorable to the non-moving party, warrant judgment as a matter of law."[1] A defendant meets this burden "by showing the court that the documents, affidavits, depositions and other evidence in the record reveal that there is no evidence sufficient to create a jury issue on at least one essential element of plaintiff's case."[2] Once the defendant discharges its burden, the plaintiff must point to specific evidence giving rise to a triable issue of fact.[3] On appeal, we review the trial court's grant of summary judgment de novo.[4]

Viewed favorably to the Kitchenses, the evidence shows that Kitchens drove a lumber truck for Oconee River Logging, delivering logs to lumberyards such as Keadle. On the day of her fall, Kitchens drove her truck into Keadle's yard and pulled to the end of a paved runway, where logs were unloaded. She exited her truck and walked around the front of the cab. It had been raining, and the area, including the concrete runway, was covered with bark, dirt, and mud. According to Kitchens, she made her way carefully through the mud, trying to walk in other people's footprints or tire tracks. At one point, she stepped in a mud tire track that appeared to be packed down, but her foot sank at least twelve inches. As she pulled her foot out of the mud, she fell forward onto her hands and knees, injuring herself.

In her complaint, Kitchens alleged that "she fell when her foot went into an obscured hole in the dirt (mud) next to the cement

---

[1] (Punctuation omitted.) *Hannah v. Hampton Auto Parts,* 234 Ga. App. 392 (506 SE2d 910) (1998).

[2] (Punctuation omitted.) Id.

[3] Id.

[4] Id.

driveway causing her to fall." She testified at deposition that her fall resulted from "the way the pavement and the dirt go together." According to Kitchens, although she thought she was walking on the mud-covered concrete, "[she] must have" stepped off the pavement, where her foot sank. She indicated that the mud made the paved and unpaved areas difficult to distinguish. Kitchens further testified that her sunken foot caught on what she believed to be the concrete runway as she pulled it out of the mud.

Following her fall, Kitchens filed an incident report with Keadle's safety director. The report noted that Kitchens "stepped in [a] pot hole [and] tripped[,] falling face forward hitting both knees and wrist[s]." Several Keadle employees denied seeing any potholes on the concrete runway. According to Keadle's yard supervisor, however, potholes did develop "off the edge" of the concrete because the "[t]rucks [did not] stay completely on the concrete." The supervisor testified that fixing these holes was not "uncommon." He also noted that Keadle cleaned the mud and other debris off the concrete runways every two and one-half to three days.

When the yard supervisor first heard about Kitchens' accident, he thought that she had fallen as she stepped off the concrete surface into a "little dip," or hole. A Keadle employee who saw Kitchens fall, however, told the supervisor that she simply slipped on the muddy concrete. At deposition, that employee similarly testified that Kitchens fell while walking on the paved runway. According to him, Kitchens slipped forward on the soft, uneven surface created by bark, dirt, and mud.

In a premises liability case such as this,

> proof of a fall, without more, does not give rise to liability on the part of a proprietor. The true basis of a proprietor's liability for personal injury to an invitee is the proprietor's superior knowledge of a condition that may expose the invitees to an unreasonable risk of harm. Recovery is allowed only when the proprietor had knowledge and the invitee did not.[5]

A landowner does not warrant safety from all things but must "exercise the diligence toward making the premises safe that a good business person is accustomed to use in such matters."[6] The requisite diligence includes "inspecting the premises to discover possible dangerous conditions of which the owner/occupier does not have actual

---

[5] (Citations and punctuation omitted.) Id. at 394.

[6] (Punctuation omitted.) *Dumas v. Tripps of North Carolina*, 229 Ga. App. 814, 816 (2) (495 SE2d 129) (1997).

knowledge, and taking reasonable precautions to protect invitees from dangers foreseeable from the arrangement or use of the premises."[7]

Kitchens testified that she fell not on the concrete runway, but "where the mud separates from the cement." When she stepped, her foot sank at least 12 inches into the mud, and as she pulled it out, she caught it on what she believed to be concrete. Although Keadle contends that she slipped on the muddy runway, Kitchens' testimony creates a question of fact as to whether mere mud or a hole off the edge of the concrete runway caused the fall.

The evidence also raises a question of fact about the parties' relative knowledge of the alleged pothole. Keadle's yard inspector testified that it was "not uncommon" for him to repair holes that developed off the side of concrete surfaces at the lumberyard.[8] Nothing in the record indicates that Keadle knew about the particular hole in which Kitchens allegedly stepped. A question of fact, however, remains as to whether Keadle acted reasonably in inspecting the premises for potholes, which Keadle's yard inspector assumed could cause a fall, and in keeping the runways clear so that individuals would know if they were on the concrete.

A question of fact similarly exists as to Kitchens' knowledge. Keadle argues on appeal that Kitchens, who had been to the lumberyard numerous times, knew about the muddy conditions. Yet, Keadle has pointed to no evidence that Kitchens knew about the pothole in which she allegedly stepped or was even aware that potholes sometimes developed next to concrete surfaces in the yard. Furthermore, Kitchens testified that she thought she was walking on packed mud and that, because of the debris on the runway, she did not realize that she had stepped off the concrete. A question of fact exists as to Kitchens' knowledge of the alleged hole.[9]

As our Supreme Court has noted, "the 'routine' issues of prem-

---

[7] (Punctuation omitted.) Id.

[8] The supervisor's testimony about the location of these potholes is unclear. At one point, he appears to talk generally about holes off the edge of concrete in the yard, while at another point he mentions potholes in relation to a "roadway" different from the concrete runways. At the supervisor's deposition, the parties drew a map of the lumberyard, which they used as a reference. On appeal, that map was not included with the deposition transcript, leaving us without a guide for the supervisor's testimony. Construing his testimony favorably to the Kitchenses, however, a jury could find that potholes had developed throughout the yard at the edge of concrete surfaces, including the concrete runways.

[9] See *CSX Transp. v. Franklin Indus.*, 213 Ga. App. 778, 783, n. 4 (445 SE2d 861) (1994) (individual's knowledge of dangers presented by muddy conditions does not demand finding that individual knew about dangers of concealed hole); see also *Pierce v. Golden Corral Corp.*, 237 Ga. App. 261, 262 (514 SE2d 470) (1999) (physical precedent only) ("We do not think that, simply because a patron has seen oil spots on previous occasions, she is automatically charged with knowledge of every single oil spot that may be present in the parking lot on any given day.").

ises liability, i.e., the negligence of the defendant and the plaintiff, and the plaintiff's lack of ordinary care for personal safety are generally not susceptible of summary adjudication, and . . . summary judgment is granted only when the evidence is plain, palpable, and undisputed."[10] The evidence in this case is not plain, palpable, or undisputed. Accordingly, the trial court erred in granting summary judgment to Keadle.

*Judgment reversed. Johnson, P. J., and Ellington, J., concur.*

DECIDED JUNE 4, 2001.

*Reynolds & McArthur, Charles M. Cork III*, for appellants.
*Fain, Major, Wiley & Brennan, Gene A. Major, John K. Miles, Jr.*, for appellee.

---

[10] *Robinson v. Kroger Co.*, 268 Ga. 735, 748 (2) (b) (493 SE2d 403) (1997); see also *Dumas*, supra at 817.