## A02A0394. BALLARD v. BURNHAM.

(568 SE2d 743)

ANDREWS, Presiding Judge.

Mary Ballard appeals from the trial court's grant of summary judgment to James Burnham, her son-in-law, in her premises liability action.

In reviewing the grant or denial of summary judgment, we apply a de novo standard of review and consider the evidence with all reasonable inferences therefrom in favor of the party opposing summary judgment. *Goring v. Martinez*, 224 Ga. App. 137, 138 (2) (479 SE2d 432) (1996).

So viewing the evidence, the record shows the following. Ballard, the mother of Maria Burnham, James' wife, and the grandmother of Emilie, their two-year-old daughter, baby-sat for Emilie for compensation, making her an invitee in her daughter and son-in-law's home. She had assisted in caring for Emilie since shortly after her birth in 1996 and previously had helped care for Emilie's two older siblings. On the evening of May 17, 1998, she baby-sat Emilie while the Burnhams went to dinner. Ballard spent the night in the Burnhams' home, as she occasionally did, and was to continue caring for Emilie the next day. On the morning of May 18, Ballard arose, walked from the den where she slept across the wooden floored living room, climbed the carpeted stairway, and went to Emilie's room. After getting Emilie up, Ballard and Emilie began walking back to the kitchen/den area. The lighting in the area of the hardwood floor was poor and the floor dark, making it difficult to see. Ballard looked down onto the hardwood floor before she stepped from the stairs, but did not see a quarter on the floor. As Ballard stepped from the carpeted steps onto the hardwood floor, she slid across the floor and fell forward, injuring her wrist. Hearing her mother cry out, Maria Burnham came to her aid and, looking in the area near Ballard's feet, found a discolored and corroded quarter near Ballard's feet.

Maria Burnham then cursed her husband because he had repeatedly given Emilie coins.[1] Maria Burnham had, on numerous occasions, talked to James Burnham about the danger of Emilie's swallowing coins as well as the danger to people walking on the floor. Maria Burnham was constantly picking change off the floor and taking coins from Emilie. She had vacuumed up so many coins that she had to replace her vacuum cleaner. On at least two occasions, the last a couple of days before her fall, Ballard was present when Maria

---

[1] James Burnham did not spend change, but collected it in a jar and was giving Emilie the change to do the same thing.

admonished James about giving change to Emilie. Maria also talked to Ballard about her concerns regarding coins ending up on the floor. Ballard was aware that Maria had to get a new vacuum cleaner because of damage from the coins. Ballard had personally picked coins off the floor and was aware that, like all two-year-olds, Emilie left books, crayons, and toys on the floor as well as coins. Further, between hearing Maria Burnham's last admonishment of James and Ballard's fall, Ballard saw Maria vacuum the house.

James Burnham acknowledged giving Emilie coins; that he had been repeatedly warned regarding the danger of her swallowing them; that the vacuum cleaner had been damaged by the coins; and that coins on the floor created a hazard. On May 18, he left the house at 7:00 a.m. and was not there when the fall occurred. Burnham suffered from diabetes. As a result, he was blind in one eye and had poor vision in the other. While he had not inspected the floor on May 18, had he done so, he could not have seen the darkened quarter on the floor due to his eyesight.

According to Maria Burnham, picking up after small children is "on and on." She was constantly aware of things left on the floor by Emilie and picked them up when she encountered them, as well as regularly vacuuming and cleaning the home. Prior to going to dinner the evening before Ballard's fall, Maria Burnham did not see the quarter on the floor.

> "(A)n owner or occupier of land is liable in damages to invitees who come upon the land for injuries occasioned by his failure to exercise ordinary care in keeping the premises safe." *Murphy v. Blue Bird Body Co.*, 207 Ga. App. 853, 857 (3) (429 SE2d 530) (1993); OCGA § 51-3-1. As a result, the [Burnhams] owed [Ballard] a duty of reasonable care. In premises liability cases, proof of falling or slipping, without more, does not give rise to liability on the part of the property owner. *Hallberg v. Flat Creek Animal Clinic*, 225 Ga. App. 212, 215 (2) (483 SE2d 671) (1997). Instead, a plaintiff may recover only if the property owner had knowledge of the condition and the plaintiff did not know about it. *Hannah v. Hampton Auto Parts*, 234 Ga. App. 392, 394 (506 SE2d 910) (1998). The true ground of liability is the defendant's superior knowledge about the existence of a condition that may subject the invitee to an unreasonable risk of injury. *Pound v. Augusta Nat.*, 158 Ga. App. 166, 167-168 (279 SE2d 342) (1981). To fulfill the duty to inspect premises to keep them safe from defects including hidden defects, the law requires

only the exercise of ordinary care, not extraordinary care. *Armenise v. Adventist Health System/Sunbelt*, 219 Ga. App. 591, 593 (466 SE2d 58) (1995).

*Hansen v. Cooper*, 253 Ga. App. 533, 535-536 (559 SE2d 740) (2002). See also *Owens v. DeKalb Med. Center*, 253 Ga. App. 19, 20 (1) (557 SE2d 404) (2001).

While the trial court concluded that Ballard had failed to show that James Burnham had superior actual or constructive knowledge of the specific quarter upon which she fell, we pretermit that issue, focusing instead on the issue of Ballard's equal knowledge that coins on the floor of the home created a hazard.[2]

As reflected by her own admissions set out above, Ballard was aware of the constant problem created by coins and other items being on the floor. Additionally, immediately prior to her fall, she had safely traversed the area in which she thereafter fell. Therefore, her knowledge being at least equal to that of James Burnham, she may not recover on her premises liability claim. See, e.g., *Yasinsac v. Colonial Oil Properties*, 246 Ga. App. 484, 485 (1) (541 SE2d 109) (2000) (customer who first stepped onto a 6.5-inch-high landing, then fell off of it, had equal knowledge); *Nicholson v. Pike Nurseries*, 229 Ga. App. 540, 541 (494 SE2d 214) (1997) (customer who walked up concrete ramp while it was raining, then fell on her way down, had equal knowledge); *Hudson v. Quisc, Inc.*, 205 Ga. App. 840, 841 (424 SE2d 37) (1992) (customer who had previously slipped in grease in restaurant precluded from recovery for second slip).

*Judgment affirmed. Phipps and Mikell, JJ., concur.*

DECIDED JUNE 24, 2002 —
RECONSIDERATION DENIED JULY 16, 2002 —

*Robert H. Benfield, Jr.*, for appellant.
*Frederick A. Johnson*, for appellee.

---

[2] A grant of summary judgment will be affirmed if it is right for any reason. *Hot Shot Express v. Assicurazioni Generali, S.P.A.*, 252 Ga. App. 372, 373 (556 SE2d 475) (2001).