A98A0482. GILL et al. v. COOPER TIRE & RUBBER COMPANY.
(499 SE2d 85)

BIRDSONG, Presiding Judge.

Appellants/plaintiffs Roger Gill et al. appeal from the order of the superior court granting summary judgment in behalf of appellee/defendant Cooper Tire & Rubber Company. This premises liability suit is for injuries sustained when appellant Roger Gill, who was an electrician employed by Georgia Electric Company and performing electrical work at appellee's Albany plant, slipped and fell in an oily substance located on the pedestal floor near tire mixer no. 2, as he was assisting a co-employee in routing electrical wire during the

course of their employment. At the time of the incident, appellant Gill was ascending a ladder from the mezzanine level to the pedestal floor. As he stepped from the ladder, his right foot slipped on the oily substance and he was thrown into the tire mixer and injured. The floor was painted black and there was no direct light in the area where the fall occurred; appellant also stated, by way of affidavit, that he was unaware of the presence of the oily substance and that the dim lighting made it "difficult, if not impossible" for him to detect the substance. Appellee contends that appellant Gill gave conflicting testimony, as in his earlier deposition testimony he stated that he remembered seeing the oily substance as he stepped into it. However, Gill immediately explained in his deposition that what he was saying was that he could not remember if he saw the substance as he stepped into it or if he saw it as he slipped. He further explained that the incident "happened too quick for me to do anything about it." After his fall, appellant observed that paper towels had been placed on a ledge around the mixer base apparently to absorb the oil. Gill admits he could have seen the towels from ground level if he had been looking up for them. He claims he did not see the towels because he was discussing the manner and method of accomplishing the work assigned with another employee whom he had followed up the ladder; he did not slip on the towels but on the oil adjacent to the towels on the black floor. The oil was of a clear, yellowish tint. Although appellant Gill knew that the mixer was equipped with an automatic lubricator and the maintenance people only had to keep the oil replenished, he was unfamiliar with the fact that the mixer was equipped with an oil catch-basin system which leaked oil from the mixer.

A Senior Project Engineer for appellee tire company testified that he had learned that oil spills would occur in the mixers in 1968 "when [he] saw [his] first mixer and saw the trays overflowing because somebody didn't clean the solids out of it." He further testified that the mixer is designed with the basin system; the drip pans are placed because it is anticipated that oil will drip down the outside of the mixer; typically during 1993, approximately fifty gallons of oil combined with carbon black would escape from the mixer into the drip pans in a two-day period; drip pans are typically twelve inches wide and about an inch and a half deep; they are not intended to hold fifty gallons of oil; drip pans can become stopped-up and cause oil leaks or spills onto the pedestal; and, if oil absorbent pads are in place on the pedestal floor, an oil leak has occurred. At the time of the incident, appellee had no single person responsible for preventing oil spills; everybody was responsible for plant safety.

Georgia Electric had a maintenance contract with appellee, and both parties were responsible for keeping things clean or keeping

materials off the floor. Maintenance personnel from Georgia Electric put the absorbent paper towels down at mixer no. 2 in October 1993 in anticipation of a hydraulic leak which would occur upon start-up of the mixer. These towels came from the central storeroom of Cooper Tire. Mixer no. 2 had, on occasion, both hydraulic leaks and oil pan leaks. Mixer no. 2 had a hydraulic leak on the latch cylinder bulkhead in October 1993; it is unknown if the leak was repaired before the date of the incident. In addition to drip pan system leaks, the mixer also had hydraulic oil leakage at start-up which occur more frequently than drip pan leaks. September 20, 1993 was the start-up for dry cycling of mixer no. 2; appellee's personnel also would have been running mixer no. 2 during start-up and it would take three or four months time for start up to be completed. The operations manager of Georgia Electric opined that on October 29, 1993, it was "very well possible" that appellee's production personnel would be in the vicinity of the pedestal of mixer no. 2 and this possibly would occur more than once during the usual activities of a day; appellee's supervisory personnel would have been "just in and out" of the mezzanine area in October 1993. The Georgia Electric maintenance leader testified that appellee's production employees came down to the mezzanine to clean up cold pieces of rubber that might fall into the mix batch on the drop mill; appellee's employees would be in and out of the mezzanine area "[m]aybe once a shift." In October 1993, Georgia Electric's maintenance leader, who then was a maintenance craftsperson, observed that oil had accumulated on the tire mixer pedestal; he cleaned the oil up because he was concerned someone might fall. *Held:*

1. In ruling on a motion for summary judgment, the opposing party should be given the benefit of all reasonable doubt, and the court should construe the evidence and all inferences and conclusions arising therefrom most favorably toward the party opposing the motion. *Moore v. Goldome Credit Corp.*, 187 Ga. App. 594, 595-596 (370 SE2d 843). The applicable summary judgment standard in a slip and fall case is that of *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) as modified by *Robinson v. Kroger Co.*, 268 Ga. 735 (493 SE2d 403). Further, while opinion testimony will not support the granting of a motion for summary judgment, it can support its denial. *Mitchell v. Rainey*, 187 Ga. App. 510, 513 (370 SE2d 673); *Dickson v. Dickson*, 238 Ga. 672, 675 (4) (235 SE2d 479).

2. OCGA § 51-3-1 imposes a non-delegable duty upon an owner or occupier of land to exercise ordinary care in keeping the premises and approaches safe where the owner or occupier has, by express or implied invitation, induced or led others to come upon the premises for any lawful purpose. See, e.g., *Moon v. Homeowners' Assn.*, 202 Ga. App. 821 (415 SE2d 654); *Towles v. Cox*, 181 Ga. App. 194, 196 (1)

(351 SE2d 718).

3. "[I]n order to recover for injuries sustained in a slip-and-fall action, an invitee must prove (1) that the defendant had actual or constructive knowledge of the hazard; and (2) that the plaintiff lacked knowledge of the hazard despite the exercise of ordinary care due to actions or conditions within the control of the owner/occupier." *Robinson v. Kroger Co.*, supra at 748-749. Before an owner can be held liable for the slippery conditions on his floors, produced by a foreign substance thereon, it is necessary that the proof show that he was aware of the substance or would have known of its presence had he exercised reasonable care. *Alterman Foods v. Ligon*, 246 Ga. 620, 622 (272 SE2d 327). "However, the plaintiff's evidentiary proof concerning the second [*Robinson*] prong is not shouldered until the defendant establishes negligence on the part of the plaintiff — i.e., that the plaintiff intentionally and unreasonably exposed self to a hazard of which the plaintiff knew or, in the exercise of ordinary care, should have known." *Robinson v. Kroger Co.*, supra at 749. Although the evidence of appellee's superior knowledge is slight, there does exist some circumstantial evidence from which a jury could infer that appellee had actual or constructive knowledge of the oil spill hazard.

Additionally, while generally a constant patrol of the premises is not required, because ordinary diligence does not require an inspection of property in the absence of any reason for the owner to believe that such an inspection is necessary (*Towles*, supra at 196 (1), citing *Hood v. McCall Clinic*, 145 Ga. App. 314 (243 SE2d 571)), a constant patrol is required where there exists conditions making the premises unusually dangerous. *Towles*, supra at 196 (1); see *Alterman*, supra at 622. Considering the inherent design of the mixers, known to appellee and its mechanical engineer, which resulted in recurring oil spills of two distinct types (hydraulic oil leaks and oil spills from overflow of the oil-catch basin system), the necessity for installing absorbent pads or paper towels around the mixer and its pedestal to contain recurring oil spills, the highly slippery characteristic of oil, the black color of the floor, the electrical construction/maintenance taking place in the vicinity of the mixers, the dim lighting conditions and the proximity of mixer no. 2 and its pedestal to the ladder leading to the mezzanine, we also find that a jury question exists *in this case* whether appellee allowed an unusually dangerous condition to exist on its premises which would impose upon it the duty of providing a constant patrol of the danger area. Compare *Towles*, supra.

4. Appellee contends that certain statements of appellant Gill, regarding when he detected the oily substance, were contradictory. See generally *Prophecy Corp. v. Charles Rossignol, Inc.*, 256 Ga. 27 (343 SE2d 680) and *Gentile v. Miller &c., Inc.*, 257 Ga. 583 (361 SE2d

383). Although appellant Gill's affidavit contains a statement which might be construed as being somewhat contradictory, particularly with a portion of his earlier deposition testimony, this potential contradiction is substantially negated when the earlier deposition testimony is construed in the manner Gill intended. The meaning of Gill's deposition testimony was reasonably and immediately explained during the taking of the deposition. Whether testimony is contradictory, and whether a reasonable explanation has been offered is a question of law. *Hallberg v. Flat Creek Animal Clinic*, 225 Ga. App. 212, 214 (1) (483 SE2d 671), citing *Worley v. State Farm &c. Ins. Co.*, 208 Ga. App. 805, 807 (432 SE2d 244). As explained, the essence of Gill's deposition testimony is that he could not remember if he first saw the oily substance as he stepped into it or as he slipped; that is, that he did not detect the oily substance until either he was actually in the physical process of stepping into it or was actually slipping in it; consistent with Gill's reasonable explanation, it is this interpretation which must be given to this portion of his testimony on appeal.

5. The alleged failure of appellant Gill to exercise ordinary care for his own safety was not established as a matter of law by his admissions that he could have seen the absorbent towels had he looked up or that he first saw the oil as he was stepping in it. It remains a jury question whether Gill, taking into account all the circumstances existing at the time and place of the fall, exercised the prudence the ordinary careful person would use in a like situation. *Robinson*, supra at 748-749. The evidence in this case is not "plain, palpable, and undisputed," within the meaning of *Robinson*, supra at 748, that Gill failed to exercise ordinary care for his personal safety.

As this case was not susceptible to summary judgment, when the applicable precedent of *Robinson*, supra, is applied, the trial court erred in granting summary judgment to appellee.

*Judgment reversed. Johnson and Smith, JJ., concur.*

DECIDED MARCH 4, 1998 —
RECONSIDERATION DENIED MARCH 23, 1998

*Donald D. Rentz*, for appellants.

*Cannon & Meyer Von Bremen, William E. Cannon, Jr., William H. Gregory II*, for appellee.