A01A0964. OWENS v. DEKALB MEDICAL CENTER, INC. et al.
(557 SE2d 404)

MIKELL, Judge.

Myrtie Owens fell and was injured as she attempted to exit a revolving door on the premises of DeKalb Medical Center, Inc. She sued the Medical Center and Decatur Church of Christ Senior Housing, Inc. d/b/a Christian Towers for premises liability and negligence. The trial court granted summary judgment to the Medical Center and Christian Towers. Owens appeals, claiming that issues of material fact remain with regard to her claims. We affirm as to the Medical Center and reverse as to Christian Towers.

To prevail on a motion for summary judgment, the moving party must demonstrate that there is no genuine issue of material fact, and that the undisputed facts, viewed in a light most favorable to the party opposing the motion, warrant judgment as a matter of law.[1] A defendant carries this burden by demonstrating the absence of evidence as to one essential element of plaintiff's case. Should the defendant do so, the plaintiff "cannot rest on [her] pleadings, but rather must point to specific evidence giving rise to a triable issue."[2] Our review is de novo.[3]

Viewing the evidence in the light most favorable to Owens, the record shows that Owens was an elderly resident of Christian Towers, an unassisted living facility for senior citizens. On October 27, 1997, Colleen Lazenby, an employee of Christian Towers, drove Owens and several other residents to the Medical Center for a "senior fair." The trip took about five minutes. Owens was the only

---

[14] See *Nash v. State*, 271 Ga. 281, 284-285 (519 SE2d 893) (1999); cf. *Wilbanks*, supra, 251 Ga. App. at 265 (15).
[1] OCGA § 9-11-56 (c); *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991).
[2] Id.
[3] *Walker v. Virtual Packaging*, 229 Ga. App. 124 (493 SE2d 551) (1997).

member of the Christian Towers group who used a walker.

The Medical Center provided eight volunteers in four locations to help the senior fair attendees, but did not station volunteers or employees at the exit. The exit consisted of a revolving door with two traditional doors on either side. These side doors were marked or otherwise identified as emergency exits. When the Christian Towers group prepared to leave the premises, Owens headed for one of the side doors, but Lazenby thought the side doors were locked or alarmed, although there is evidence that they were unlocked and passable for purposes of exiting the premises. Lazenby told Owens that she would have to exit through the revolving door and asked Owens to wait while she went to get the van. Owens told Lazenby that she could not go through the revolving door because she was scared. Lazenby replied she would return to help her through the door.

After Lazenby went outside to go to the van, residents began filing through the revolving door. Owens tried to follow the other residents through the revolving door with her walker, fell, and was injured. While Owens was lying on the ground, Lazenby asked her why she decided to use the revolving door, and Owens replied that she did not want to be left behind.

### Liability of Medical Center

1. The basis of a proprietor's liability to an invitee in a premises liability action is the proprietor's superior knowledge of a hazard or condition which may subject the invitee to an unreasonable risk of harm.[4] Although *Robinson v. Kroger Co.*[5] reduced the burden on plaintiffs to show they exercised reasonable care in encountering a hazard, plaintiffs must still, in order to avoid summary judgment, establish evidence of a prima facie case by showing that a defendant's knowledge of a hazard is greater than the plaintiff's.[6]

The trial court found that Owens had equal, if not superior, knowledge to the Medical Center concerning the danger of using the revolving door with her walker. Although the routine issues of premises liability are not normally subject to summary adjudication, the trial court held that the evidence was plain and palpable that the Medical Center was not liable. Owens presents a number of arguments in opposition to the trial court's order, which we will consider in turn, but we find the trial court's analysis to be correct.

Owens points to evidence that the Medical Center knew of previ-

---

[4] *Gray v. Oliver*, 242 Ga. App. 533 (530 SE2d 241) (2000).
[5] 268 Ga. 735, 747-748 (2) (b) (493 SE2d 403) (1997).
[6] *Gray,* supra, 242 Ga. App. at 534-535 (1).

ous injuries in connection with the revolving doors. The Medical Center's risk manager testified that she was sure that people had fallen at the revolving door, although she had no independent recollection of any particular event. Owens argues that this testimony creates a jury question as to who had superior knowledge of the danger of the revolving door; but the testimony shows only that falls had occurred, and that does not indicate knowledge on the part of the Medical Center that the revolving door represented a hazard or condition other than what would be obvious to any person using the door.

There was no evidence that the revolving door was defective. If the revolving door was a hazard to Owens in particular, because she was an elderly person who used a walker, she was in the best position to judge the danger to her of using the revolving door. Owens argues that even if she had some knowledge that the revolving door was a hazard to her, whether her knowledge was superior to the Medical Center's should be a question for the jury. She refers to *Lee v. Myers*,[7] in which we found that there was a jury question with regard to the relative knowledge between the proprietor and the invitee with regard to the danger presented by the stairs on which the invitee was injured. *Lee* is not factually analogous, however, because evidence showed that the plaintiff fell because the stairs were not properly secured, and so a question was presented as to whether the proprietor or invitee had greater knowledge of the defect. Here, there is no evidence of a defect. The record would not support a finding that the Medical Center had superior knowledge that the revolving doors were a hazard to Owens.

Owens next argues that the Medical Center was negligent in not posting persons near the exit to point out the availability of the side doors or to assist her in traversing the revolving door. She argues that given the Medical Center's knowledge of prior accidents at the revolving door, the "Emergency Exit" signage on the side doors, and the presence of large numbers of elderly persons at the senior fair, it was foreseeable that an elderly person would be injured without such supervision.

Owens draws our attention to a 1938 New York state decision, *Schubart v. Hotel Astor*,[8] in which the evidence showed that an elderly lady was injured in a revolving door when some young men entered the door at an excessive speed, causing the door to strike her. The New York court held that a jury could find that it was the duty of the hotel to post employees at the door to supervise guests as they

---

[7] 189 Ga. App. 87 (374 SE2d 797) (1988).
[8] 168 Misc. 431 (5 NYS2d 203), aff'd, 255 A.D. 1012 (8 NYS2d 567) (1938).

filed through because it was reasonably foreseeable that they would otherwise be injured. The New York court made it clear, however, that its decision was based on the peculiar facts of the incident, which occurred on a Saturday night in a very crowded hotel following a football game. "There is no doubt that the owner of an ordinary building, under ordinary circumstances, is not required to have a doorman present or to take any particular action to supervise the use or to control the operation of a revolving door. Here, however, we have neither an ordinary building nor ordinary circumstances."[9] Even if we find the reasoning of the New York court to be persuasive, the case is not on point. The danger to the plaintiff in *Hotel Astor* lay in the foreseeable misuse of the revolving door by third parties. Here, the record would support no more than that Owens's fall was caused by the interaction between Owens and the revolving door, with no other intervening factor.[10]

The evidence does not support a duty to supervise the revolving door because of special circumstances. Young people and elderly people routinely enter and exit from hospitals. Young people and elderly people routinely use revolving doors. The Medical Center had no reason to foresee a special danger to the visitors from Christian Towers. The Georgia cases which Owens cites to support her arguments with regard to other negligence claims are not persuasive because they concern the breach of a proprietor's duty not actively to harm the plaintiff.[11]

Owens next claims that, under the "constant patrol" doctrine, the Medical Center was under a duty to station an attendant at the revolving door to help the elderly through it. "[W]hile generally a constant patrol of the premises is not required, . . . a constant patrol is required where there exist[ ] conditions making the premises unusually dangerous."[12] The constant patrol doctrine, however, pertains to a duty to protect the public from dangerous conditions that are likely to arise on a periodic basis due to the nature of operations on the premises, such as oil spills from a tire mixer,[13] ice spills in a supermarket produce department,[14] or trash accumulating on the floor of a

---

[9] *Hotel Astor*, supra, 168 Misc. at 434.

[10] Christian Towers argues that there is no evidence that going through the revolving doors caused Owens to fall. Because of our other findings we need not address this argument.

[11] *Lipham v. Federated Dept. Stores*, 263 Ga. 865 (440 SE2d 193) (1994) (proprietor's employee knocked plaintiff to the ground); *Wade v. Mitchell*, 206 Ga. App. 265 (424 SE2d 810) (1992) (plaintiff was injured when proprietor's employee inflated a tire, which then exploded); *Johnson v. Kimberly Clark*, 233 Ga. App. 508 (504 SE2d 536) (1998) (metal poles dangerously stacked).

[12] *Gill v. Cooper Tire &c. Co.*, 231 Ga. App. 482, 485 (3) (499 SE2d 85) (1998).

[13] Id.

[14] *Shepard v. Winn Dixie Stores*, 241 Ga. App. 746, 748-749 (527 SE2d 36) (1999).

fast food restaurant.[15] In contrast, a revolving door is not a periodically recurring dangerous condition, but an apparent and static condition.

Owens next argues that when the Medical Center voluntarily undertook to provide the attendees of the senior fair with additional assistance that it did not properly discharge that undertaking in a reasonable manner. Evidence shows that the Medical Center arranged for volunteer guides at certain locations to help the senior fair attendees, but not at the exit. Although the Medical Center arranged for volunteers to assist the attendees, "[u]ndertaking measures to protect patrons does not heighten the standard of care; and taking some measures does not ordinarily constitute evidence that further measures might be required."[16] Once a voluntary duty is assumed it must be carried out with reasonable care,[17] but there is no evidence that reasonable care was not exercised by the Medical Center in providing the volunteers. There is no evidence to support a finding that the Medical Center increased any danger to the attendees by providing the assistance, nor did it mislead Owens or deprive her of possible additional help.

As part of her final argument with regard to the liability of the Medical Center, Owens notes that a plaintiff is not bound to the same degree of care in apprehending danger in moments of stress or when her attention has been necessarily diverted.[18] Owens further shows that she was stressed and distracted by the prospect of being left behind. In premises liability cases, stress or diversion might excuse a plaintiff from noticing a hazard. But this is not a case where stress or distraction caused an invitee to overlook the nature or existence of a condition. Owens knew the risk inherent in proceeding through a revolving door while using a walker. We are unpersuaded by Owens's argument that the evidence that she was afraid of the revolving door showed no more than an unspecified fear of doors rather than any knowledge on her part that a revolving door represented a dangerous condition to her.

As Owens cannot show a question of material fact as to whether the Medical Center had superior knowledge of the hazard alleged to have caused her injury, the Medical Center is entitled to summary judgment.

---

[15] *Jones v. Krystal Co.*, 231 Ga. App. 102, 104-105 (498 SE2d 565) (1998).
[16] *Lau's Corp.*, supra, 261 Ga. at 494-495 (3).
[17] Id.
[18] *Hamilton v. Kentucky Fried Chicken &c.*, 248 Ga. App. 245 (545 SE2d 375) (2001).

## Liability of Christian Towers

2. The trial court held that Owens assumed the risk of her injury as a matter of law when she decided to leave the premises through the revolving door. We disagree, holding that questions of fact remain for a jury to resolve.

> The defense of assumption of the risk of danger applies when the plaintiff, with a full appreciation of the danger involved and without restriction of his freedom of choice either by the circumstances or by coercion, deliberately chooses an obviously perilous course of conduct. A defendant asserting an assumption of the risk defense must establish that the plaintiff (1) had knowledge of the danger; (2) understood and appreciated the risks associated with such danger; and (3) voluntarily exposed himself to those risks. . . . Whether a party assumed the risk of his injury is a jury question that should not be decided by summary adjudication unless the defense is conclusively established by plain, palpable and undisputed evidence.[19]

Even where the facts are undisputed, it is usually for the jury to say whether the conduct in question met the standard of the reasonable person.[20] Factors such as a plaintiff's advanced age must be considered, and the matter should ordinarily be left as a question of fact for the jury rather than as a matter of law for the court.[21]

Here, Christian Towers assumed the duty of transporting Owens to and from the Medical Center and was obligated to exercise ordinary care for her safety while doing so. As discussed in Division 1, the Medical Center did not undertake to aid Owens through the revolving door by stationing volunteers at the door. But Christian Towers did undertake to help Owens exit.[22] Lazenby's plan was to board the other residents first, instruct Owens to stay in place, and return later to help her. Whether Christian Towers failed in its duty by preventing Owens from exiting through the side door and by leaving her unattended under circumstances where she feared being left

---

[19] (Citations and punctuation omitted.) *Rubin v. Cello Corp.*, 235 Ga. App. 250, 252 (1) (b) (510 SE2d 541) (1998).

[20] *James v. Sears, Roebuck & Co.*, 140 Ga. App. 859 (232 SE2d 274) (1976).

[21] *Harvey Freeman & Sons, Inc. v. Stanley*, 259 Ga. 233, 235 (3) (378 SE2d 857) (1989) (assumption of risk/avoidance of danger held jury issue based on plaintiffs' youth and inexperience).

[22] *Lau's Corp.*, supra, 261 Ga. at 494-495 (3); *Atlanta Center v. Cox*, 178 Ga. App. 184 (341 SE2d 15) (1986) (physical precedent only); *Mixon v. Dobbs Houses, Inc.*, 149 Ga. App. 481 (254 SE2d 864) (1979).

behind are issues for the jury to decide.[23]

Christian Towers claims that Owens assumed the risk when she decided to leave the premises through the revolving door using her walker. It points to evidence showing that the residents of Christian Towers are expected to live independently and care for themselves; that Owens was lucid at the time of the incident; and that Owens did not like revolving doors and considered them dangerous. Uncontroverted evidence also shows that Lazenby assured Owens that she would help Owens through the revolving doors after returning with the van. But whether Lazenby was negligent in failing to help Owens through the door and into the van before assisting the other residents is a question for the trier of fact. Accordingly, the trial court erred in granting summary judgment to Christian Towers.

*Judgment affirmed in part and reversed in part. Pope, P. J., and Miller, J., concur.*

DECIDED NOVEMBER 27, 2001 —
RECONSIDERATION DENIED DECEMBER 14, 2001.

*Adams & Adams, Charles R. Adams III, Larry E. Stewart,* for appellant.

*Hall, Booth, Smith & Slover, Karl M. Braun, Weissman, Nowack, Curry & Wilco, Leigh M. Wilco, Steven D. Caley,* for appellees.

---

[23] See *Pye v. Taylor & Bird, Inc.*, 216 Ga. App. 814, 815 (456 SE2d 63) (1995) ("the primary business purpose of a nursing home is to take care of residents who, because of age, infirmity or some ailment, are no longer able to take care of themselves").