**FOURTH DIVISION**
**MCFADDEN, C. J.,**
**COOMER and MARKLE, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received*** **in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**February 27, 2020**

# In the Court of Appeals of Georgia

A19A2234. GERVIN et al. v. THE RETAIL PROPERTY TRUST.   MA-083

MARKLE, Judge.

In this premises liability action, Fannie Gervin ("Fannie"), along with her husband, Bobby L. Gervin (collectively "the Gervins"), appeal from the trial court's order granting summary judgment in favor of the Retail Property Trust ("RPT") after she sustained injuries attempting to enter through a revolving glass door on RPT's property. On appeal, the Gervins allege the trial court erred in (1) determining that the prior traversal doctrine bars their claims, and (2) failing to perform its gatekeeping role under OCGA § 24-7-702 (b) with regard to their expert witness. We conclude that the trial court properly determined that the Gervins's claims are barred by the prior traversal doctrine. We further conclude that, although the trial court failed to exercise its role as gatekeeper in determining the admissibility of the expert testimony

under OCGA § 24-7-702 (b), the expert's testimony is irrelevant because the Gervins's claims were barred by the prior traversal doctrine. Therefore, we affirm.

> Summary judgment is appropriate when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. In reviewing the grant or denial of a motion for summary judgment, we apply a de novo standard of review, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant.

(Citation omitted.) *Edwards v. Moore*, 351 Ga. App. 147 (830 SE2d 494) (2019).

So viewed, the evidence shows that, on May 2, 2015, Fannie and her daughter were shopping at Lenox Square Mall ("the Mall"). Fannie entered the Mall through an automatic revolving glass door at the entrance. After shopping for about an hour, Fannie exited this same door to ask her husband, who was waiting outside, if he wanted ice cream. As she reentered the Mall through the same revolving glass door, she indicated that it started to move, but then stopped before she could get out, and she slammed her head into the stationary glass wing of the door, sustaining injuries to her mouth, teeth, neck and upper back.

Video surveillance of the incident showed that Fannie simply ran into a stationary glass pane of the revolving door. The Mall incident report also indicated

2

that Fannie walked into the side section of the revolving door, and not the door itself. In an affidavit, a maintenance employee at the Mall, who had worked there for at least 13 years, stated that the door is inspected every morning, there are no records of any malfunction or defects with the door, and the revolving door is equipped with an automated self-diagnostic testing system, which detected no malfunction or defects with the door at or near the time of the incident. Further, RPT's operations director stated in his deposition testimony that he could not recall any other incidents involving the revolving door prior to Fannie's accident.

The Gervins filed suit against RPT, asserting claims for premises liability, negligence, vicarious liability, loss of consortium, and attorney fees, and asserting over $22,000 in medical expenses.[1] The Gervins identified an expert witness, who would testify that, among other things, the door was defective because there was no sign on the door to alert patrons of its moving glass parts, as recommended by the manufacturer. The expert opined that the absence of a sign caused Fannie to become distracted and made the door dangerous.

---

[1] The Gervins initially filed suit against Lenox Square Mall Management, Simon Property Group, LP, and John Doe. These defendants were subsequently dropped from the case, and RPT was substituted in as the party defendant. The Gervins then filed a restated and amended complaint against RPT only.

RPT moved for summary judgment, arguing, as is relevant here, that the prior traversal doctrine barred the Gervins's claim, that the Gervins had presented no evidence showing that RPT had actual or constructive knowledge of a hazardous condition, and that there was no evidence the door malfunctioned or was defective. RPT also filed a motion to exclude the testimony of the Gervins's expert witness, asserting that his testimony did not meet the standard for admissibility under OCGA § 24-7-702 (b) and *Daubert v. Merrill Dow Pharmaceuticals, Inc.*, 509 US 579 (113 SC 2786, 125 LE2d 469) (1993).

The trial court did not rule on RPT's motion to exclude the expert.[2] Following a hearing, the trial court granted summary judgment in RPT's favor, finding that the prior traversal doctrine barred the Gervins's claims. This appeal followed.

1. The Gervins argue that the trial court erred in finding that the prior traversal doctrine bars their recovery. We disagree.

> Under OCGA § 51-3-1, a person who owns or occupies land and by express or implied invitation, induces or leads others to come upon his premises for any lawful purpose, is liable in damages to such persons for injuries caused by his failure to exercise ordinary care in keeping the

---

[2] Although the Gervins assert that the trial court granted RPT's motion to exclude their expert's testimony, no such order addressing the expert testimony appears in the record.

4

premises and approaches safe. In order to recover on a premises liability claim, a plaintiff must show (1) that the defendant had actual or constructive knowledge of the hazard; and (2) that the plaintiff lacked knowledge of the hazard despite the exercise of ordinary care due to actions or conditions within the control of the owner/occupier. Accordingly, the fundamental basis for an owner or occupier's liability is that party's superior knowledge of the hazard encountered by the plaintiff. In other words, a plaintiff is not entitled to recovery if the undisputed evidence demonstrates that the plaintiff's knowledge of the hazard was equal to or greater than that of the defendant.

(Citations and punctuation omitted.) *Cherokee Main Street, LLC v. Ragan*, 345 Ga. App. 405, 407 (813 SE2d 397) (2018).

"A static condition is one that does not change and is dangerous only if someone fails to see it and walks into it." (Citation and punctuation omitted.) *Jones Lang LaSalle Operations, LLC v. Johnson*, 350 Ga. App. 439, 440 (829 SE2d 629) (2019). A revolving door is a static condition. See *Owens v. Dekalb Medical Center, Inc.*, 253 Ga. App. 19, 23 (1) (557 SE2d 404) (2001). Also, where a case involves a static condition, such as a revolving door, and the invitee knows of the condition, "there is no duty on the part of the proprietor to warn him and there is no liability for resulting injury because the invitee has as much knowledge as the proprietor does." (Citation omitted.) *Callaway Gardens Resort, Inc. v. Berman*, 290 Ga. App. 111, 112

5

(658 SE2d 895) (2008); see also *Rentz v. Prince of Albany, Inc.*, 340 Ga. App. 388, 390 (1) (797 SE2d 254) (2017) ("If nothing obstructs the invitee's ability to see the static condition, the proprietor may safely assume that the invitee will see it and will realize any associated risks.") (citation omitted); *Wittenberg v. 450 Capitol Assoc.*, 207 Ga. App. 260, 263 (427 SE2d 547) (1993) ("[T]here is no obligation to protect the invitee against dangers or hazards which are known to him or which are so obvious and apparent he may reasonably be expected to discover them.").

Georgia's longstanding prior traversal rule provides that "when a person has successfully negotiated an alleged dangerous condition on a previous occasion, that person is presumed to have equal knowledge of it and cannot recover for a subsequent injury resulting therefrom." *Perkins v. Val D'Aosta Co.*, 305 Ga. App. 126, 128 (699 SE2d 380) (2010). "The rule imputing knowledge of a danger to a person who has successfully negotiated an alleged dangerous condition before applies only to cases involving a static condition that is readily discernible to a person exercising reasonable care for his own safety." (Punctuation omitted.) *Strauss v. City of Lilburn*, 329 Ga. App. 361, 364 (765 SE2d 49) (2014). It is a plaintiff's knowledge of the specific hazard that determines whether the plaintiff can prevail on a premises

liability claim. *Norwich v. Shrimp Factory, Inc.*, 332 Ga. App. 159, 161-162 (770 SE2d 357) (2015).

Here, the revolving glass door, consisting of its stationary glass panes, was a static condition that Fannie had successfully entered and exited through twice that day. See *Owens*, 253 Ga. App. at 23 (1). Fannie indicated she was familiar with revolving glass doors, she understood how such doors worked, and she was familiar with the fact that revolving doors have stationary parts, as well as moving parts, and she was able to differentiate between the two. There is no evidence that her perception of the revolving door or its stationary panes had changed from the previous times she entered the door to the time of her accident, or that her view was obstructed. *Rentz*, 340 Ga. App. at 390 (1). As such, Fannie had equal knowledge of the revolving door and its stationary parts, and the trial court therefore properly concluded that the Gervins's claims are barred by the prior traversal doctrine.[3]

---

[3] We are unpersuaded by the Gervins's reliance on *Muskett v. Sketchly Cleaners, Inc.*, 297 Ga. App. 561, 564 (3) (677 SE2d 731) (2009), and *Jones Lang LaSalle Operations v. Johnson*, 350 Ga. App. 439. Likewise, we are unpersuaded by the Gervins's attempt to distinguish *Wittenberg*, 207 Ga. App. at 263, from the present case because, although it is not a prior traversal case, the *Wittenberg* holding confirms the longstanding principle that the owner has no duty to protect an invitee against a hazard or defect that is obvious and apparent.

7

2. The Gervins also argue that the trial court did not consider or address the reliability, relevancy, or admissibility of their expert witness, and thus failed to perform its gatekeeping role under OCGA § 24-7-702 (b). They further argue that their expert witness's testimony was admissible, and that his specialized knowledge would have assisted the trier of fact in understanding the importance of proper signage on the revolving door to assist the user in distinguishing between the moving and stationary parts of the door, thus removing the hazardous condition. However, the Gervins's reliance on their expert's testimony to create a question of fact as to the issue of causation is unavailing in light of our conclusion in Division 1.

It is true that trial courts have a gatekeeping function as it pertains to determining the admissibility of an expert witness's testimony, which it appears the trial court here failed to perform.

OCGA § 24-7-702 ( b) ("Rule 702 (b)") provides:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise, if: (1) The testimony is based upon sufficient facts or data; (2) The testimony is the product of reliable principles and methods; and (3) The witness has applied the principles and methods reliably to the facts of

8

the case which have been or will be admitted into evidence before the trier of fact.

The rule applies to non-scientific experts such as the proffered expert here. *Smith v. CSX Transp., Inc.*, 343 Ga. App. 508, 511-512 (1) (b) (806 SE2d 890) (2017).

In order to establish the admissibility of expert testimony under Rule 702, the trial court must consider: (a) the qualifications of the expert; (b) the reliability of the testimony; and (c) the relevance of the testimony. *Scapa Dryer Fabrics, Inc. v. Knight*, 299 Ga. 286, 289 (788 SE2d 421) (2016). "Whether a witness is qualified to render an opinion as an expert is a legal determination for the trial court and will not be disturbed absent a manifest abuse of discretion." *Ga. Dept. of Transp. v. Delor*, 351 Ga. App. 414, 426 (8) (830 SE2d 519) (2019). "A trial court, however, abuses its discretion by failing to act as a gatekeeper." *Kershaw v. Princeton Properties Mgmt, Inc.*, 348 Ga. App. 779, 783 (824 SE2d 668) (2019) (physical precedent only).

Here, RPT moved to exclude the Gervins's expert witness under *Daubert* and Rule 702 (b). The trial court did not rule on the motion before granting summary judgment in RPT's favor on the ground that the Gervins's claims were barred by the prior traversal doctrine. Although, ordinarily, we would vacate and remand the case for the trial court to perform its gatekeeping function, we need not do so here.

9

*Kershaw*, 348 Ga. App. at 783. Given our conclusion in Division 1 that the claims are barred by the prior traversal doctrine, the expert's testimony as to causation is irrelevant.[4] *Scapa Dryer Fabrics*, 299 Ga. at 289. Accordingly, the trial court properly granted summary judgment in RPT's favor, and we affirm.[5]

*Judgment affirmed. McFadden, C. J., and Coomer, J., concur.*

---

[4] We note that, here, even if the trial court had determined that the expert witness's testimony was admissible, such testimony would not allow the Gervins to survive summary judgment where the claims were barred by the prior traversal doctrine. Compare *An v. Active Pest Control South, Inc.*, 313 Ga. App. 110, 116-117 (2011) (where trial court did not decide defendant's motions challenging the admissibility of plaintiff's experts' opinions, and testimony was dispositive of questions raised on summary judgment, trial court erred by not deciding admissibility before granting summary judgment).

[5] Because the husband's claim for loss of consortium is derivative of his wife's personal injury claim, the trial court properly granted summary judgment on that claim as well. *Behforouz v. Vail*, 281 Ga. App. 603, 604 (636 SE2d 674) (2006).